## FITZGERALD v. DETROIT UNITED RAILWAY.

1. TRIAL—INSTRUCTIONS—DAMAGES—PERMANENT INJURY.
   In an action against a street railway company for personal injuries, it was error for the court to advise the jury that they might allow damages for permanent injury, in the absence of evidence that the injury was permanent.

2. SAME—ARGUMENT OF COUNSEL—DUTY OF COURT—CURING ERROR.
   Argument by plaintiff's counsel, in a personal injury case

against a street railway company, that the testimony of defendant's medical witnesses was colored, apparently made deliberately and withdrawn only in an effort to prevent a reversal of any judgment secured, deserved immediate and emphatic condemnation by the court.

3. SAME—CURING ERROR.

There is no good reason for trial counsel imposing upon the trial court the duty to cure, if possible, the calculated and the natural effect of improper argument of counsel to a jury.

4. APPEAL AND ERROR—MISCARRIAGE OF JUSTICE—INSTRUCTIONS—ARGUMENT OF COUNSEL.

Where, in an action for personal injuries, a verdict was returned for plaintiff, and upon examination of the evidence by the appellate court it cannot be said that there was no miscarriage of justice by reason of erroneous charge of the court and intemperate argument of counsel, the judgment will be reversed.

Error to Wayne; Hally, J. Submitted April 9, 1919. (Docket No. 13.) Decided May 29, 1919.

Case by Grace M. Fitzgerald against the Detroit United Railway for personal injuries. Judgment for plaintiff. Defendant brings error. Reversed.

*Corliss, Leete & Moody* and *A. B. Hall,* for appellant.

*Monaghan, Monaghan, O'Brien & Crowley,* for appellee.

OSTRANDER, J. Plaintiff had a verdict for $4,500, upon which judgment was entered. Defendant's motion for a new trial was denied. The testimony returned with the writ of error relates to two principal subjects, one, the nature and extent of plaintiff's injuries, the other, her physical condition previous to the injury; it being contended here, as it was upon the motion for a new trial, that the verdict is against the weight of evidence and is excessive, and urged that improper argument of plaintiff's counsel and an

error in the charge of the court are reflected in the verdict.

Testimony for the plaintiff tended to prove that when alighting from defendant's street car with one foot upon the step, one on, or approaching, the pavement, supporting herself by grasping a handle or railing on the car, the car was suddenly started, throwing her against it, dragging her for some distance, and, besides ruining her clothes, injuring her spine, her head and shoulder. As alleged in the declaration, some consequences were—

"that her ovaries, stomach, bowels and internal organs were permanently affected; that she suffers severe nervous headaches, and is confined to her bed for long periods of time; that she suffered severe bruises all about her body, head and legs; that her eyesight and hearing have been affected; that by reason of said injuries she becomes easily fatigued; that the ligaments of her legs and back were severely strained, and she suffers great pain since that time by reason of the said accident and that her nervous system has been permanently deranged."

It is also alleged that prior to receiving the injury she was in perfect health, both in mind and body. The court instructed the jury to fix her damages—

"at such sum as will compensate her for the injury and destruction of her garments, the loss of wages she suffered by being absent from her work, the doctor bills and medical expenses which arose from the injury, and reasonable and fair compensation for the pain and suffering she has endured since the accident and reasonable and fair compensation for the pain and suffering she may endure in the future, if you find, from the testimony, she will endure pain and suffering in the future."

In this connection the jury was told:

"I charge you that in determining what may be fair compensation for the injury done to the plaintiff in this case, you may take into consideration her pres-

ent age, together with the mortality tables, as set forth in the statute laws of the State of Michigan, if you find from the testimony in this case that the injuries complained of herein specified will be permanent and are permanent in their character."

And again:

"Now, gentlemen of the jury, you have been told that you have a right to take into consideration the mortality tables. You have a right to take into consideration the mortality tables, which are the expectancy of life, provided there is testimony here in this case which will warrant you in concluding that the injuries that were suffered here are of a permanent character."

The mortality tables were not introduced in evidence. While the very nature of the injuries, some effects of which were claimed to be present at the trial, which was about two years after the injury, was such that the inference would be natural, if not necessary, that they would continue for some time thereafter, there was no medical or other testimony tending to prove that the injuries were permanent or the period within which the effects would probably cease.

As to the argument of plaintiff's attorney to the jury, the record shows the following:

"And, gentlemen, when these leeches will bring in neighbor against neighbor, why didn't they bring a neighbor here that has seen her walk since the injury, a further distance than two or three blocks. Do you suppose, with the methods that they use in trying lawsuits that they would have disregarded that if it could have been done. Do you suppose for a minute, if they could get testimony that Miss Fitzgerald was able to walk, was able to work, was able to dance, was able to play, as you and I and all of us are entitled to, that they would not have brought them here—and then speak about other people's rot. I don't know whether to resent the way it has been tried or not. I know the D. U. R is an artificial body, but if it was made up of flesh and blood it ought to be ashamed, ashamed

to the core, to bring in neighbor against neighbor, to try to put sister against sister, because of something that Mr. Hall knows, and you can guess that he knows.

"*Mr. Hall:* Now, if the court please, I want an exception to that statement. There was absolutely no testimony here that I know anything about this family whatever.

"*Mr. Murphy:* If you confined your own remarks to the testimony then this would not be necessary.

"*Mr. Hall:* Just a minute. I wish counsel would let me get my objection. I would like that, Mr. Stenographer.

"*The Reporter:* I was taking it.

"*Mr. Hall:* Will you note an exception, your honor.

"*The Court:* Very well. You may note an exception.

"*Mr. Murphy:* Of course, Mr. Hall, if you are interrupting me for the purpose of putting me off my theme, let me caution you it cannot be done.

"*Mr. Hall:* I am just saving my record, Mr. Murphy.

"*Mr. Murphy:* Sometimes young lawyers will hold to their convictions upon a case. Gentlemen, I want you to stand not only upon the testimony of their own doctors, and I have got it here written up, and he cannot take any exception to these remarks. I want you to stand on this woman's condition, on the testimony of their expert, Dr. Povey; that will please me. Let me tell you, there is no issue to the neurotic condition, to the effect her spine is in, to the bent end of her spine, to the bruised vertebrae, to the shattering of her nervous system, there is no issue, Mr. Hall agrees and I agree. He says it is due to a previous illness, I say, and Miss Fitzgerald says, it is due to an accident. That is the only issue in this case; there is not another thing involved, and that is brought out simply for the purpose of reducing the damages in this case, and for no other reason.

"Gentlemen, who are our doctors? Are they the trained physicians of the D. U. R.; are they trained by Miss Fitzgerald to 26 years' experience as the D. U. R. surgeon was; are they trained as Dr. Povey was with six years' experience as the D. U. R. expert? Any jury that will believe an expert that is placed on the stand by the defendant in this case, knowing that

their testimony could not be colored—anything but colored, or they would not have them, you know that.

"*Mr. Hall:* If the court please, I think this has gone far enough; I wish your honor would take some action.

"*Mr. Murphy:* I say that their testimony is colored.

"*Mr. Hall:* I want an exception to that statement. Did you get that, Mr. Stenographer?

"*The Reporter:* Yes.

"*Mr. Hall:* The idea counsel stating here, we would not have a doctor whose testimony was not colored, it seems to me is going beyond the limit. I think your honor ought to take some action.

"*Mr. Murphy:* I will withdraw that, Mr. Hall.

"*Mr. Hall:* Of course you will, after you have said it.

"*Mr. Murphy:* Because I do not want to give you a chance to get out from under this.

"*Mr. Hall:* Will your honor please take some notice of my exception?

"*The Court:* His statement, as I understand it, has been withdrawn by counsel.

"*Mr. Murphy:* It will be withdrawn, your honor.

"*The Court:* When it has been withdrawn, gentlemen of the jury, you also are to disabuse your mind of any impression, if it made any impression upon your mind."

It was error for the court to advise the jury they might allow damages for permanent injury. The statements of plaintiff's counsel in his argument to the jury were calculated to prejudice defendant. There is some evidence, found in the reason stated by counsel for withdrawing the charges made against the medical witnesses, that they were deliberately made and only withdrawn in an effort to prevent a reversal of any judgment which plaintiff might secure. The attack made upon the medical witnesses produced by defendant was gratuitous and deserved immediate and emphatic condemnation by the court.

In the charge, the court said:

"Never mind this row between these attorneys here,

that has not anything to do at all with the facts that are in evidence before you. Attorneys get excited sometimes and sometimes they don't get excited, and sometimes when they are making an argument to the jury they say things that probably they would not say if they had a little time to think about them, but that has not anything to do with it. You have this case presented to you from the testimony that has been offered here upon this witness stand. That is the thing that is to determine the issue that exists between these people, and you must determine that issue from that testimony and from nothing else, because if you should take into consideration, for instance, this row between these attorneys and should say to yourself, 'One is right and the other is wrong,' or you should sympathize with them in some fashion or other, don't you see that you are letting your minds be swayed by something else besides the testimony in the case."

Counsel for appellee do not discuss in the brief the criticism of the charge of the court which has been referred to and upon the subject of alleged improper remarks of counsel content themselves with saying that intemperate and improper remarks of counsel are not grounds for reversal unless the court is satisfied that substantial injury to defendant resulted, that they are not ground for reversal if withdrawn or the jury instructed to disregard them, that a mere exception to the statements of counsel not supported by testimony is insufficient to establish error, and that the court will not reverse a case for improper remarks of counsel when those remarks are provoked by opposed counsel and are retaliatory. Upon each of these propositions, which are really presented in confession and avoidance of error, decisions of the court are cited.

No good reason can be given by and in behalf of trial counsel for imposing upon the trial court the duty to cure, if possible, the calculated and the natural effect of improper arguments of counsel to a jury.

It would be mere waste of time and space to repeat here the obvious reasons which require fair treatment of witnesses and fair discussion of testimony by trial counsel

It is not possible to say, in this case, that there has been no miscarriage of justice. On the contrary, an analysis of the testimony raises very grave doubts concerning the extent of the injury suffered by plaintiff on account of defendant's negligence. Plaintiff declined to give her name to the conductor of the car because, she says, she thought she was not much hurt and did not desire publicity. This is, of course, not conclusive of anything except her state of mind at the time, but tends to negative the idea that she was, or believed she was, seriously hurt. There is testimony tending to prove that five days after she was hurt she went to her doctor's office for examination and treatment and five days later returned to her work. There is testimony tending to prove that up to a few months before she was hurt she was disordered, under treatment by medical advisers, that many of the symptoms of disorder which are ascribed to the injury were present long before the injury was received. Before as well as after her injury, her medical advisers found absence or retardation of the knee jerk, and other reflex nervous movements, indicating spinal and nervous disorders. Her history previous to the injury includes a condition in which her lower limbs were for some time paralyzed and a period during which she walked with the aid of crutches and a cane. Very shortly before the injury she carried a cane when she went abroad. Upon resuming work she also carried the cane. It was for the jury to determine the nature and extent of her injuries, and we have examined the testimony only for the purpose of deciding whether it is plain that no harmful effects resulted from the error in the charge and the im-

proper conduct of counsel. We conclude that reversible error is made to appear.

There are some assignments of error not set out or commented on for the reason that grounds for the exceptions taken are not likely to be present upon a new trial. The judgment is reversed, and a new trial granted, with costs to appellant.

BIRD, C. J., and MOORE, STEERE, BROOKE, FELLOWS, STONE, and KUHN, JJ., concurred.