VANDERVLIET v. THE STANDARD ACCIDENT INSURANCE CO.

1. INSURANCE — INDEMNITY INSURANCE — NOTICE — SUFFICIENCY — GENERAL AGENT—WHAT CONSTITUTES.

In an action on an indemnity policy of insurance, authority of an agency to appoint subagents and to countersign the policy as general agent, *held*, sufficient to constitute it a "duly authorized agent" within the meaning of the terms of the policy requiring immediate written notice of an accident to be given to the home office or to its "duly authorized agent."

2. SAME—AUTHORITY TO WAIVE WRITTEN NOTICE.

An agent authorized to receive notice under the terms of the policy, *held*, to have power to waive a written notice and to agree to take care of the matter himself.

3. SAME—PARTIES—REAL PARTY IN INTEREST.

That plaintiff secured money from a bonding company with which to pay a judgment secured against him and his partner in an action for an accident covered by defendant's policy, and orally agreed to repay same out of any recovery he might have against the defendant on its policy, *held*, not to deprive him of his legal interest in said policy, there being no assignment of same.

4. SAME—NOTICE—WAIVER—ESTOPPEL—TRIAL—QUESTION FOR JURY.

Where the accident for which indemnity is sued upon occurred on October 29th, and on December 18th the home office had actual notice thereof, and sent a representative to investigate, in company with plaintiff, without denying liability on the ground of failure to give the notice earlier, the trial court was not in error in submitting to the jury the question as to whether defendant had waived its right to an earlier notice.

Error to Kalamazoo; Weimer (George V.), J. Submitted January 27, 1920. (Docket No. 109.) Decided February 27, 1920.

Assumpsit by Cornelius Vandervliet, individually and as surviving partner and assignee of Richard Heystek, against The Standard Accident Insurance Company of Detroit, Michigan, for the amount of a policy of indemnity insurance. Judgment for plaintiff. Defendant brings error. Affirmed.

*Keena, Lightner, Oxtoby & Hanley,* for appellant.

*Jackson, Fitzgerald & Dalm,* for appellee.

Prior to June 6, 1914, Heystek and Vandervliet had entered into a contract with the city of Flint to pave certain streets in said city. On said June 6th, they secured from defendant the indemnity policy of insurance sued upon. By virtue of this policy, defendant agreed to indemnify plaintiffs against loss imposed by law upon them on account of bodily injuries accidentally sustained by members of the general pub-

lic by reason of the prosecution of plaintiffs' contract with the city of Flint. Heystek and Vandervliet had furnished to the city of Flint a bond, executed by the Chicago Bonding Company, indemnifying the city of Flint against any loss from any judgments that might be recovered against the city from the negligence of Heystek and Vandervliet.

On October 29, 1914, two men were injured through an accidental collision with one of the vehicles of Heystek and Vandervliet, used on the paving job. These two men brought action against the city of Flint, secured judgments against the city, which, after affirmance on appeal to this court, were paid by the city. The city, in turn, sued Heystek and Vandervliet over and secured a judgment for the amount of its expenditures in the premises.

It appears from the record at this time Heystek was insolvent and Vandervliet had not sufficient means with which to satisfy the judgment of the city. An arrangement was thereupon made, between Vandervliet and the Chicago Bonding Company, which was liable to the city on its bond, by the terms of which the Chicago Bonding Company advanced or loaned to Vandervliet a sum sufficient to satisfy the city's judgment. No assignment of the interest of Heystek and Vandervliet in the bond of the defendant was made to the Chicago Bonding Company, but it was orally agreed that suit should be commenced thereon by Vandervliet, who had secured an assignment of Heystek's interest therein, and, in the event of recovery, the sum so recovered should be paid to the Chicago Bonding Company in liquidation of the advance made by said bonding company to him.

This suit was brought on the policy of indemnity issued by defendant in accordance with said agreement. Plea was the general issue, with notice that defendant would show that plaintiff failed to give no-

tice of the accident as required by the policy, which read:

"The assured upon the occurrence of an accident, shall give immediate written notice thereof, with the fullest information obtainable to the company, at its home office, Detroit, Michigan, or its duly authorized agent."

There was no dispute between the parties as to the amount involved, and plaintiff recovered judgment in the sum of $1,956.71.

BROOKE, J. (*after stating the facts*). Defendant reviews the case in this court, grouping his assignments of error under the following heads:

"(1) The plaintiff was not entitled to a verdict, because he had not complied with the terms of the policy, with reference to notice of the accident.
"(2) The Chicago Bonding Company is the real party in interest, and the court erred in permitting a recovery in this action by the plaintiff.
"(3) The court erred in permitting a recovery by plaintiff, on the theory of waiver or estoppel."

1. The language of the policy with reference to notice has already been quoted. The policy itself purports to be signed by the defendant, "The Standard Accident Insurance Company, J. S. Heaton, Secretary," and countersigned, "Flint Insurance Agency, G-Agt. (Agent) by Allen S. Beach, Secy." It is undisputed upon this record that no written notice was given by the assured to either the defendant or to its duly authorized agent. It is the claim of the plaintiff, and testimony was introduced tending to support that claim, that at the time the policy was issued it was delivered to Richard Heystek, one of the partners engaged in the paving contract, by Mr. Beach. Mr. Heystek testified in part:

"* * * At the time he gave me the policy, he got some blanks for damages, you know, to fill them in,

and I told Mr. Beach I ain't got any good education, I couldn't read and hardly write nothing, and, well, Mr. Beach, he said, well, he would keep them right here and you come in the office and you make your home right here in the office and if something happens, I take care of you, I take care of the whole thing. Mr. Beach kept the blank notice in his office."

This witness further testified that on the morning following the accident,—

"* * * I went to Mr. Beach and told him that at half-past ten at night there was a buggy coming through with two men and ran into a brick wagon, and one broke his arm and one hurt his back, and I told Mr. Beach all about it and he said he would take care of it. This was the next morning after the accident. A couple of days after that, I saw Mr. Beach. He told me he looked up some witnesses. He had the policeman and he saw a man from the D. U. R., a flagman, I guess, and he told me he had talked with those witnesses. There was somebody else with Mr. Beach at that time, but I don't know who it was. This was a couple of days after the accident."

The accident happened on the 29th of October, and it was the claim of the defendant that it received no notice, either directly at its home office or through Mr. Beach, its agent, until about the middle of December. Mr. Beach, testifying with reference to the policy and his authority, said:

"The policy upon which this suit was brought was issued by the company and mailed to me and countersigned by me as agent and delivered. That signature is the signature of the agency there. It was my custom to sign that way. That signature meant general agent. The meaning of that was at that time I was handling a little more territory than the local city of Flint. I was supposed to take care of the writing of business and placing of it in one or two counties outside. I did not have any agents in other counties. I could have but did not. At the time the arrangement was made, I think I was to cover Shiawassee, Livingston and Lapeer counties."

Upon the point now under discussion, it is the defendant's claim that Mr. Beach was a mere soliciting agent and was not "its duly authorized agent" for the purpose of receiving notice of an accident, within the terms of the policy contract. If Beach was such an agent as was entitled to receive notice under the terms of the contract (and the learned circuit judge so charged the jury), he undoubtedly had the right to waive a written notice and to agree to take care of the matter himself, as, according to the testimony of Heystek, he did agree. The policy was countersigned by Beach, as general agent. His authority extended beyond the city of Flint and apparently covered three counties, with the right to appoint subagents. Upon this point, appellant relies on the case of *Oakland Motor Co.* v. *Fidelity Co.*, 190 Mich. 74. The case is distinguishable, in our opinion, for the reason that there no notice was given until three months after the happening of the accident and in the meantime the insurer had suffered actual prejudice through the loss of a material witness. The cases of *Rooney* v. *Casualty Co.*, 184 Mass. 26 (67 N. E. 882), and *Travelers Ins. Co.* v. *Myers & Co.*, 62 Ohio St. 529 (57 N. E. 458, 49 L. R. A. 760), are determined upon the point that the notice was given to a mere soliciting agent. In the case at bar, the Flint Insurance Agency countersigned the policy as general agent and appears to have had authority to appoint subagents. This, in our opinion, was sufficient to constitute it a "duly authorized agent" within the meaning of the terms of the policy.

As bearing upon this question, the legislative definition of a general agent, as contained in section 1 of chapter 3, Act No. 256, Pub. Acts 1917, may be considered, although the contract in question antedates that definition, which follows:

"A general, district, State or special agent is hereby

defined to be a person, firm or corporation acting under authority from any insurance company, to supervise and appoint agents, inspect risks, and otherwise transact business for and as a representative of such insurance corporation. * * * An agent is hereby defined as a person, firm or corporation acting under written authority from any insurance company to solicit insurance and or write and countersign policies of insurance and collect premiums therefor. A solicitor is hereby defined as any person acting under express authority from an agent, having authority to appoint solicitors, to solicit insurance for such agent, but without the power or authority to issue or countersign policies or otherwise bind any company of which such agent may be the duly authorized representative."

The Flint Insurance Agency had authority to solicit insurance, to appoint agents, to collect premiums and to countersign policies.

2. Was the plaintiff, under the proofs in the case, the real party in interest? It may be noted, in passing, that the question is not raised by the pleadings; but, considering it upon its merits, we think it is without force. No assignment was made by plaintiff to the Chicago Bonding Company of his interest in the policy in suit. He did secure the money from the bonding company with which to pay the judgment against him and he did agree orally to repay the bonding company the money out of any recovery he might have against the defendant. This agreement did not deprive him of his legal interest in the policy. *J. Frank & Co.* v. *Casualty Co.*, 175 Cal. 293 (165 Pac. 927).

In the case last cited, the assured had borrowed the money to pay the judgment and had actually executed an assignment of the proceeds of the judgment to secure the loan. But the court held that the plaintiff was entitled to recover, saying:

"It is therefore immaterial to the insurance carrier how or when that corporation obtained the money or

the credit which enabled it to pay Cousins the amount due."

See *West Riverside Coal Co.* v. *Casualty Co.,* 155 Iowa, 161 (135 N. W. 414, 48 L. R. A. [N. S.] 195) ; *Kennedy* v. *Casualty Co.,* 100 Minn. 1 (110 N. W. 97, 9 L. R. A. [N. S.] 478, 10 Ann. Cas. 673).

3. It is next alleged that the court erred in submitting to the jury the question of estoppel. It is undisputed that about the 18th of December, defendant had actual notice at its home office of the happening of the accident; that it did not, at that time, deny liability upon the ground of failure to give the notice as required by the policy contract; but, on the contrary, that a representative of the company went to the city of Flint, conferred with Mr. Vandervliet, interviewed witnesses in company with Mr. Vandervliet, and took statements from said witnesses. Assuming that the defendant company had had no notice of the accident prior to that time and that it intended to rely upon plaintiff's failure to give the notice required by the policy to defeat any claim made under the policy, it was clearly not justified in taking up the time of Mr. Vandervliet to interview witnesses and obtain statements from them. *Cleaver* v. *Insurance Co.,* 71 Mich. 414; *Towle* v. *Insurance Co.,* 91 Mich. 219; *Jacobs* v. *Insurance Co.,* 183 Mich. 512.

The court charged the jury:

"The burden is on the plaintiff to satisfy you, first, that the written notice was waived; secondly, that the verbal notice was timely given, that the company waived its right to insist upon an earlier notice, those are the questions in the case for you to determine."

Under the facts appearing upon the record, we think the charge was warranted.

Judgment is affirmed.

MOORE, C. J., and STEERE, FELLOWS, STONE, CLARK, BIRD, and SHARPE, JJ., concurred.