GRUBAUGH *v.* SIMON J. MURPHY CO.

1. TRIAL—MISCONDUCT OF COUNSEL—PREJUDICIAL ERROR.
     In an action for personal injuries, where counsel for plain-
     tiff deliberately placed before the jury facts designed to
     advise them that the real defendant was an insurance
     company, such conduct was so prejudicial as to require
     a reversal of the judgment in plaintiff's favor, although
     the trial court instructed the jury to pay no attention to
     the remarks of counsel, and that the question of liability
     insurance was not at issue. MOORE, C. J., and BIRD and
     SHARPE, JJ., dissenting.

2. SAME—EXCESSIVE VERDICT—DAMAGES.
     A verdict for $18,000, under the circumstances of this case,
     *held*, excessive. MOORE, C. J., and BIRD and SHARPE, JJ.,
     dissenting.

3. PARTIES—ASSIGNMENT AS SECURITY—REAL PARTY IN INTEREST
   —QUESTION FOR JURY.
     In an action for personal injuries, where plaintiff had made
     an assignment of his claim, but there was testimony that
     said assignment was given as security merely, the trial
     court was not in error in submitting to the jury the
     question as to whether plaintiff was the real party in
     interest under 3 Comp. Laws 1915, § 12353.

4. TRIAL—EVIDENCE—EXHIBITION OF INJURED ARM.
     Where plaintiff was on the stand as a witness in his own
     behalf, the trial court was not in error in allowing him
     to enter the jury box and in permitting the jurors to feel
     his injured arm.

Error to Wayne; Webster (Clyde I.), J.    Submit-
ted October 10, 1919. (Docket No. 26.)   Decided April
10, 1920.   Rehearing denied June 17, 1920.

Case by Luther A. Grubaugh against the Simon J.
Murphy Company for personal injuries.   Judgment
for plaintiff.   Defendant brings error.   Reversed.

On excessiveness of verdicts in actions for personal injuries
other than death, see comprehensive note in L. R. A. 1915F, 30.

*Keena, Lightner, Oxtoby & Hanley*, for appellant.

*Max Hulett* and *Anderson, Wilcox & Lacy* (*Wilkinson, Routier & Hinkley*. of counsel), for appellee.

MOORE, C. J. (*dissenting*). The plaintiff, a building contractor, 42 years of age, while attempting to become a passenger in one of the elevators in the Penobscot building in Detroit, received severe injuries for which he obtained a verdict and judgment against the defendants in the sum of $18,000. A motion was made for a new trial, which was overruled. The case is brought here by writ of error.

The questions raised by appellant are:

(1) It is the claim of defendant that it was prejudicial error for the trial judge, in the presence of the jury, to question defendant's counsel as to the interest of a liability insurance company in the case, and to permit counsel for the plaintiff, during his examination of the jury, to interrogate defendant's counsel upon the same subject; that this was unnecessary to protect the interests of plaintiff, and was done by plaintiff's counsel only to prejudice defendant in the eyes of the jury, and that this error was of such a nature the court could not correct it by afterwards admonishing the jurors to disregard it. The matter undoubtedly influenced the jurors on the question of liability, and in view of the extraordinarily large verdict rendered for injuries such as were sustained by the plaintiff, there can be no question not only that it had an influence on the question of liability, but also that it had a direct bearing upon the size of the verdict prejudicial to the interests of the defendant.

(2) In view of the fact that plaintiff had assigned his cause of action to the Harding Lumber Company and the Highland Park Paint & Glass Company, these assignees became real parties in interest, and under the statute should have been joined as such. This maneuver on the part of plaintiff also enabled him to bring before the jury the fact that he was indebted to these two concerns in a substantial amount, and the payment of their accounts must first be taken from

any judgment entered in his favor. This very clearly tended to enhance the verdict beyond an amount to which the plaintiff was properly entitled.

(3) The court erred in permitting* the plaintiff to enter the jury box and allowing all of the jurors to feel his alleged injuries.

(4) The verdict was excessive.

We will consider these groups in the order above stated.

1. The important part of the record giving rise to this question is as follows:

"On the *voir dire* examination of the jury, the following proceedings took place:

"*Mr. Hanley:* That the real parties in interest in this action are the Highland Park Paint & Glass Company and the H. W. Harding Lumber Company. * * * Now, as I said, it is our claim and the claim is not an imaginary one or fictitious one, but it is based upon a written assignment made by Mr. Grubaugh, that the parties in interest in this case are, as I stated, the Harding Lumber Company and the Highland Park Paint & Glass Company, and from the papers we have in our possession that have been turned over to our client by Mr. Grubaugh, through Mr. Routier, his attorney, the only persons who will benefit by any judgment that may be rendered in this case will be the Lumber Company and the Paint & Glass Company. * * *

"*Mr. Routier:* Mr. Dentz, didn't I ask you this morning—

"*Mr. Hanley:* Just a minute. I object to any interrogation of Mr. Dentz, or anybody else by counsel unless they are on oath and the usual procedure. I don't know of any right that gives Mr. Routier or anybody else any authority to interrogate counsel. Mr. Dentz is one of the lawyers in this case, a member of the bar, and associated with me in the trial of the case.

"*Mr. Routier:* I was asking Mr. Dentz, if your honor please, who he was with, who his employer was. He is here at the table with the attorney for the defendant, or with the attorneys for the defendant; I think I am entitled to know that.

"*Mr. Hanley:* I will tell you his employers, the Simon J. Murphy Co.

"*Mr. Routier:* Mr. Dentz, didn't you tell me this morning with whom you are associated?

"*Mr. Hanley:* Just a minute. Don't answer.

"*Mr. Routier:* Well, if your honor please, I can say that Mr. Dentz informed me this morning he was associated with the Standard Accident Insurance Company, and I was going to ask Mr. Phillips if he had ever worked for the Standard Accident Insurance Company.

"*Mr. Phillips:* No, sir.

"*Mr. Hanley:* Just a minute. I object to that, your honor, as grossly improper and known by Mr. Routier to be grossly improper and made by him after objection and in accordance with the practice of this court I ask that this be declared a mistrial.

"*The Court:* Is the Standard Accident Company concerned in this case? If they are, I think he has a right to ask the jury about them.

"*Mr. Hanley:* That question is addressed to Mr. Routier?

"*The Court:* No, to you.

"*Mr. Hanley:* With due respect to your honor, I hardly think that is a proper question to put to me. This case is defended by the Simon J. Murphy Company.

"*The Court:* You are asking for a mistrial because he referred to it. I cannot pass on it unless I know.

\* \* \*

"*Mr. Hanley:* No showing that the Standard Accident Insurance Company is interested in this case whatever.

"*Mr. Routier:* Well, Mr. Dentz told me this morning that he was connected with it, and I asked him, if your honor please, and he answered me that he was.

"*Mr. Hanley:* I again take exception to the remarks of counsel, and in accordance with the practice of this court, I ask that the jury be dismissed and the case continued for the term.

"*Mr. Lacy:* If your honor please, I suggest the question you asked counsel is a very appropriate question.

"*The Court:* I think it is. I don't know how you are going to determine. It certainly does not make

any difference with this jury's verdict and cannot make any difference if the insurance company—if the defendant is insured, and I shall instruct them very positively upon that, but at the same time if the defendant is insured I think counsel have a right to examine the jury in reference to their possible connection with the company that insures the defendant. How are they going to examine them? My question therefore is, Are they insured by this company? If they are, he may proceed; if they are not, why he has got no right to examine them about it at all.   *   *   *

"*Mr. Routier:* Pardon me, judge, will you say Dentz is not connected with the Standard Accident?

"*Mr. Hanley:* I will say nothing except what is with reference to this case.   *   *   *

"*Mr. Lacy:* There is nothing here to show that there is any liability insurance. We don't know. The question as to whether there is or not is utterly immaterial. Mr. Routier was merely about to ask the question to ascertain the antecedents of jurors as a basis for peremptory challenge. That is all. And it was intended in perfectly good faith as a basis for the peremptory challenge so that we might ascertain the antecedents and the relations of the jurors, and that is the only purpose of this.

"*Mr. Hanley:* After the statement of counsel, I renew my motion.

"*The Court:* The motion is denied. I do not think that counsel should have interrogated the counsel at the table, but I do not think that is ground for a continuance and I instruct the jury that under no circumstances should you pay any attention to any of this controversy that took place here, any remarks of counsel. The question of liability insurance is not at issue here at all and you are to pay no attention to it. Counsel may, however, ask the jurors, if he so desires, whether they are stockholders or have relatives or work themselves for the company.   *   *   *

"*Mr. Hanley:* Pass the jury for cause.

"*Mr. Routier:* Pass the jury for cause.

"Examination of jury continued. Both sides satisfied. Jury sworn. Recess."

We quote from the brief of appellant:

"There is nothing in the record to indicate in any way that the defendant was covered by liability insurance in any company, and the persistent and repeated attempts of plaintiff's counsel to show to the jury that the case was being defended in court by attorneys in its employ, could have been done for only one purpose, and that is the one we have here referred to. We are not considering in this case a simple inquiry addressed to a juror as to whether or not he was interested in any insurance company, made in good faith for the purpose of exercising peremptory challenge, but we have a bald attempt, in the very outset of the case, to inform the jury that some insurance company would have to pay whatever verdict they might return. It is idle to say that after this controversy in the presence of the jury, the error could be corrected by the court simply cautioning the jurors to disregard what had taken place upon this subject."

Counsel cite, in support of their contention, *Kerr* v. *Manufacturing Co.*, 155 Mich. 191; *Fitzgerald* v. *Railway*, 206 Mich. 273; *Hughes* v. *City of Detroit*, 161 Mich. 283 (137 Am. St. Rep. 504) ; *Morrison* v. *Carpenter*, 179 Mich. 207, 222 (Ann. Cas. 1915D, 319), and other authorities.

As to the first of these cases the objectionable matter did not arise on the *voir dire* and Justice MONTGOMERY, speaking for the court, said:

"Defendant's counsel thereupon moved the court to withdraw the case from the consideration of the jury. This was refused, and so far as the record discloses, there was no reprimand of plaintiff's counsel, nor were the jury given any special instruction relating to this alleged misconduct of plaintiff's counsel. It is not conceivable that plaintiff's counsel believed the testimony to be competent, or that it could bear in the remotest degree upon any issue presented to the jury for trial. He himself had brought his suit against the National Fulton Brass Manufacturing Company, the defendant in this case. If that company was not liable, the suit should not have been brought, and he must have known it. No question was raised that the defendant company was the owner of the factory in

question, and that the alleged negligence, if proven, was the negligence of the defendant company."

Clearly a very different case from the one before us.

In *Hughes* v. *City of Detroit*, not only was the examination permitted, but counsel argued to the jury, "Why does the city take this bond from the contractor if it is not to cover just such cases as this?" Certainly this differs from the instant case. A reference to the other cases will show them to be easily distinguishable from the instant case. In the instant case the judge cautioned the jury at the time, in the strongest language possible as to what their duty was.

2. Is the claim of counsel that the Harding Lumber Company and the Highland Park Paint & Glass Company, being real parties in interest, should have been sole plaintiffs in the action, or should have been joined with Grubaugh as parties plaintiff, well taken? The plaintiff was a builder. He was indebted to the H. W. Harding Lumber Company, and the Highland Park Paint & Glass Company, and an assignment of his cause of action was made to them in October in the usual form of an assignment; we quote from it:

"For injuries occasioned to me by falling into an unguarded elevator shaft in said building, giving unto the said H. W. Harding Lumber Company and to the said Highland Park Paint & Glass Company, or either of them, full authority to take any and all steps for the collection of damages on account of said claim, in my name, which I myself might take, and giving them full authority to prosecute all claims for damages arising out of said accident, and to sign and execute in my name any and all release or releases for claims of damage and to execute in my name any and all receipts for moneys paid on account of said claim for damages, giving unto the said H. W. Harding Lumber Company and the Highland Park Paint & Glass Company, or either of them, full, complete and absolute authority to take any and all steps in the matter that I myself might take, and in my name."

This action was begun November 15th, following. The trial of the case commenced May 10, 1918, and on the same day the Harding Lumber Company and the Highland Park Paint & Glass Company addressed a letter to the defendant to the effect that the assignment taken by them from Grubaugh was given merely as security for an existing debt.

We quote from the brief of appellant:

"It is the claim of defendant that because the Harding Lumber Company and the Highland Park Paint & Glass Company were not parties plaintiff, that this action was brought in violation of section 12353, 3 Comp. Laws 1915, which states that:

'Every action shall be prosecuted in the name of the real party in interest, but an executor, administrator, guardian, trustee of an expressed trust, a party with whom or in whose name a contract has been made for the benefit of another, or a party expressly authorized by statute, may sue in his own name without joining with him the party for whose benefit the action is brought.'

"It was recently held by this court, in *Everhard* v. *Dodge Bros.*, 202 Mich. 48, that where the plaintiff had assigned her claim to an insurance company and then the action was not brought in the name of the assignee, the proceeding was in violation of the section of the statute which we have just quoted, and the case was reversed without a new trial."

The pith of the case cited is found in the syllabus, which reads:

"On appeal from justice's court where suit for damages by collision was brought in the name of the owner of the automobile, the court was in error in allowing an amendment to the declaration to the effect that suit was brought in plaintiff's name as trustee for the insurer, since the effect of the amendment is to bring a new plaintiff into the case without giving defendant an opportunity to litigate his claim in justice's court, contrary to the provisions of section 12353, 3 Comp. Laws 1915."

The jury was instructed in part as follows:

"The assignment as you know, is absolute on its face. That is, on its face, Mr. Grubaugh absolutely assigned to the Harding Lumber Company and to the Highland Park Paint & Glass Company all his claim against the Murphy Company, without any qualification, authorizing them to start suit, etc. In other words, it is an absolute assignment parting with all right that he had growing out of this accident. If you believe that that was the real intent of the parties, and that instrument was intended to be just what it says, why then, of course, Mr. Grubaugh has no right to prosecute the suit, no interest in the case. The claim then would be by those two companies against the Murphy Company. In which case if you so find, you should render a verdict of no cause of action and need not proceed to determination of the other questions I will give you. You may, however, find, as testified to by Mr. Grubaugh and the representatives of the Harding Lumber Company and the Highland Park Paint & Glass Company that the instrument, though absolute on its face, was really a security for the claims that they had against Mr. Grubaugh. If you believe that testimony, you should give effect to that. In other words, even though the assignment is absolute on its face, if the real purpose, the real intent of all the parties was as testified to by them, that is what should govern, rather than what this paper says, and so if you believe that this claim of Mr. Grubaugh's against the Murphy Company was assigned to the Highland Park Paint & Glass Company and to the Harding Lumber Company for the purpose of securing them for their debts, then you should proceed to the determination of the other questions in the case."

Section 13, chap. 12, judicature act (3 Comp. Laws 1915, § 12364), reads:

"No action at law or in equity shall be defeated by the non-joinder or mis-joinder of parties. New parties may be added and parties mis-joined may be dropped by order of the court at any stage of the cause, as the ends of justice may require."

In *Union Ice Co.* v. *Railway Co.*, 178 Mich. 346, the

suit was brought in the name of the party insured. His right to bring the suit was questioned. We quote from the opinion:

"At the time of the fire, plaintiff was insured in eight different companies. In settlement of this insurance it received the sum of $10,000. Each insurance company, upon payment of its proportionate share, received from plaintiff an assignment subrogating the assignee to the plaintiff's right of action against defendant to the extent of the amount of the sum paid by the insurance company. On August 3, 1910, and before suit was commenced herein, the eight insurance companies, by Berger & Hicks, their attorneys, entered into a contract with plaintiff which provided that suit should be brought against defendant in the name of the plaintiff, and that if a judgment was recovered it should be divided, one-half to go to plaintiff and the other half to be divided among the insurance companies in proportion to the sums which had been paid by each in settlement of the loss.

"Upon the trial defendant, evidently having knowledge of this situation, questioned plaintiff's right to sue in its own name for the use and benefit (in part) of the insurance companies."

It was held that the tort—if one was committed—was against the plaintiff and the right of action that grew out of the tort was one and indivisible, and that the plaintiff had the right to bring the suit and the judgment was affirmed.

In *Vandervliet* v. *Insurance Co.*, 209 Mich. 146, in which case an opinion was handed down February 25, 1920, the right of the plaintiff to bring the suit was questioned. We quote from the opinion:

"Was the plaintiff, under the proofs in the case, the real party in interest? It may be noted, in passing, that the question is not raised by the pleadings; but considering it upon its merits, we think it is without force. No assignment was made by plaintiff to the Chicago Bonding Company of his interest in the policy in suit. He did secure the money from the bond-

ing company with which to pay the judgment against him and he did agree orally to repay the bonding company the money out of any recovery he might have against the defendant. This agreement did not deprive him of his legal interest in the policy. *J. Frank & Co.* v. *Casualty Co.*, 175 Cal. 293 (165 Pac. 927).

"In the case last cited, the assured had borrowed the money to pay the judgment and had actually executed an assignment of the proceeds of the judgment to secure the loan. But the court held that the plaintiff was entitled to recover, saying:

" 'It is therefore immaterial to the insurance carrier how or when that corporation obtained the money or the credit which enabled it to pay Cousins the amount due.'

"See *West Riverside Coal Co.* v. *Maryland Casualty Co.*, 155 Iowa, 161 (135 N. W. 414, 48 L. R. A. [N. S.] 195) ; *Kennedy* v. *Casualty Co.*, 100 Minn. 1 (110 N. W. 97, 9 L. R. A. [N. S.] 478, 10 Ann. Cas. 673)."

We think it must be held that this branch of the case was properly submitted.

3. Was it error to permit the jurors to feel plaintiff's injured arm? Counsel say:

"To feel the lump in the arm would not aid the jurors in determining the amount of pain, if any, that the plaintiff suffered therefrom; what inconvenience it might cause him and whether or not it was permanent. It is quite well recognized that many people have a marked aversion to touching or feeling any abnormal physical condition, and it is fair to assume that at least some of the twelve men who sat on the jury were of this class. A person who would be so affected could not help but have his judgment biased after such an experience."

The principle laid down in *Carstens* v. *Hanselmen*, 61 Mich. 426, is quite applicable to the case at bar, where the court says:

"No inspection after an injury is healed, apart from some knowledge of the character of the injury and the method of treatment, could enable even a medical expert to decide upon the merits or demerits of the at-

209—Mich.—36.

tending surgeon. A jury's guessing from such an inspection would be of no value whatever."

A reading of that case will show it is unlike the case before us.

In reviewing the authorities, Baldwin on Personal Injuries (2d Ed.,) § 527, page 611, says:

"In an action for damages resulting from an injury the plaintiff may exhibit the injury to the jury. Such an exhibition tends to make the description of the injury more intelligible and it cannot be supposed to have an undue influence upon the feelings and sympathies of the jury. It might as well be contended that a man who lost an arm or leg should not be permitted to appear before the jury to testify in relation to it, lest thereby the feelings of the jury might be influenced and they, under the undue excitement and sympathy created thereby, might do injustice. It cannot be assumed that any such consequence would follow such action.

"Such evidence is immediate, real evidence, where the thing which is the source of evidence is present to the tribunal, and of all proof is the most satisfactory and convincing of the injury received."

See, also, Graves v. City of Battle Creek, 95 Mich. 266 (19 L. R. A. 641); Edwards v. Village of Three Rivers, 96 Mich. 625; Langworthy v. Township of Green, 95 Mich. 93; Barfoot v. White Star Line, 170 Mich. 349. If the sense of sight may properly be used in determining the extent of an injury it is difficult to see why the sense of touch may not also be used.

4. Was the verdict excessive? The court in overruling the motion for a new trial said in part:

"The injuries in this case were serious. There is plenty of testimony to warrant the jury in finding the verdict that they did. If the plaintiff was entitled to recover at all, and the jury found that he was, $18,000 cannot be considered excessive."

There was proof that plaintiff had incurred medical and hospital bills amounting to $1,735. There was

testimony tending to show that at the time of the injury he was earning nearly if not quite $10,000 a year. There was evidence that the accident resulted in permanent injuries to the plaintiff, which were very serious; that there was an injury to the scalp one and a half inches or so on the side of the head; that there was a laceration from the left corner of his mouth extending to his ear completely through the cheek and the upper part of the superior maxillary bone; that this wound was stitched inside and out; that the alveolar process was torn out, with it nine teeth on the upper side of the left jawbone; that the left arm was broken at the humerus in the lower third; that both clavicles were fractured; that the broken arm was reset five times at intervals of three or four days, and that the arm would never be normal, and that plaintiff would never recover the use of it; that there was, and still is, a difference in the size of the left injured arm and the right arm.

There is testimony that while in the hospital plaintiff had a night and day nurse in attendance, and for three or four weeks after plaintiff entered the hospital he mainly subsisted upon liquid nourishment fed through a tube; that he sustained permanent injuries to his back; also that he sustained permanent injuries to his legs; that before the accident he was a healthy, strong and vigorous man, weighing about 185 pounds. With reference to this plaintiff testified:

"A few weeks after I came out of the hospital, I weighed 140 pounds and the last time I was weighed it was 156 pounds with my clothes on including my overcoat. The 185 pounds that I referred to was without an overcoat."

In the case of *Fishleigh* v. *Railway*, 205 Mich. 145, in an opinion by Justice FELLOWS, there is a very full collation of the Michigan and other cases bearing upon the subject of excessive verdicts. We think it cannot

be said in view of these authorities that the verdict was excessive.

Judgment should be affirmed, with costs to the plaintiff.

BIRD and SHARPE, JJ., concurred with MOORE, C. J.

BROOKE, J. I cannot agree in this case with the conclusion reached by my Brother MOORE. I am of the opinion that the colloquy set out in the opinion of the Chief Justice, between counsel for plaintiff, counsel for defendant, and the court, was in bad faith, deliberately designed to advise the jury of the fact that the real defendant was an insurance company, and not the defendant named in the pleadings. In this jurisdiction, cases are not infrequent where counsel, aware of the fact that juries are prone to be more liberal with the funds of insurance companies than with those of private individuals, have successfully sought to place before the jury the fact that the nominal defendant was insured, and therefore would not suffer by the rendition of a substantial or excessive verdict. This practice has met with the consistent disapproval of this court, as will be fully demonstrated by an examination of the authorities cited by my Brother MOORE on this branch of the case.

In denying a motion for a new trial, the learned circuit judge concluded that the questions were improper; but believed them to have been without prejudice. With this conclusion I cannot agree. The verdict of $18,000 should be held to be excessive as a matter of law (see cases cited in *Fishleigh* v. *Railway*, 205 Mich. 145). It may well be doubted whether the jury would have rendered a verdict of such magnitude against an individual defendant. Indeed, I am of opinion that the contrary may be confidently asserted.

If counsel, well learned in the law, choose to deliberately imperil the interests of their clients by improper advertisement of a fact well known to be preju-

dicial to a fair and impartial consideration of the case by the jury, the resulting judgment should be set aside, even though the party who suffers is the innocent client instead of offending counsel.

I agree with Justice MOORE that the question of plaintiff's right to maintain this action was properly submitted to the jury, and that it was not error to permit plaintiff to enter the jury box and allow the jurors to feel of his arm.

I think the judgment should be reversed and a new trial granted, with costs of this court to defendant.

STEERE, FELLOWS, and STONE, JJ., concurred with BROOKE, J.

Justice KUHN took no part in this decision.