CHURCH v. STOLDT.

1. JURY—EXCUSING FOR CAUSE—DISCRETION OF COURT—APPEAL AND ERROR.

Error does not necessarily follow when the court, through abundance of caution to secure an impartial jury, excuses a juror on ground not technically sufficient to support a challenge for cause, as it would in retaining one who is challenged and ought to have been rejected.

2. SAME.

While it may be contended that the excusing of a juror for cause because he held a policy in a certain automobile insurance company was not tenable, where said insurance company was not a party to the action and defendant was not shown to have been insured in it, yet where defendant did not object to the juror called in place of the one rejected, and is not shown to have exercised all of his peremptory challenges, nor to have questioned the competency and impartiality of the jury

On the question of negligence of child in running in front of automobile, see note in 26 L. R. A. (N. S.) 435.

On contributory negligence of children generally, see note in L. R. A. 1917F, 10.

as finally constituted, there was no reversible error; the court having discretionary power within the limit exercised.

3. SAME—DISCRETION OF COURT IN VOIR DIRE EXAMINATION.
Much latitude may be allowed by the trial court in examination of jurors on their *voir dire* to enable parties to intelligently exercise their right of challenge either peremptory or for cause.

4. SAME—GOOD FAITH.
In an, action for the negligent killing of a girl at a street intersection by defendant's automobile, it was not error for plaintiff's counsel to interrogate jurors on their *voir dire* examination as to whether they had a policy in a certain mutual automobile insurance company, where no reference was made to the subject after the jury was selected, and it does not appear that the questions were not asked in good faith or for prejudicial purposes.

5. NEGLIGENCE—CROSSING ACCIDENT—INFANTS—DEATH—CONTRIBUTORY NEGLIGENCE—DIRECTED VERDICT.
Where there was testimony that deceased, a girl 10 years old, was struck at a street intersection while on her way home from school, at a time when there was much traffic on the street, that a wagon was halted by the driver to allow deceased and her companion to cross, which she attempted to do, going at an ordinary walk, when she was struck by defendant's automobile, which was traveling at a rate of speed of 20 miles an hour or more, it cannot be said, as a matter of law, that she was guilty of contributory negligence.

6. SAME—EVIDENCE—INFERENCES.
While direct, affirmative testimony that decedent looked in the direction from which defendant's automobile was coming, after she passed from behind a passing wagon, is meager, it cannot be said that there were no facts or circumstances from which a jury might reasonably draw a favorable inference.

7. SAME—SPECIAL QUESTIONS—TEST AS TO CONTRIBUTORY NEGLIGENCE—DUTY TO HAVE CAR UNDER CONTROL.
Under the circumstances of this case, it cannot be said that an answer to the special question proposed by defendant's counsel, as to whether deceased looked after she passed from behind the wagon and while she was

yet a safe distance away from the automobile would furnish the test of her negligence, as a matter of law, since she had a right to expect any driver approaching such a busy corner would have his car under control, as was his duty under the statute.

8. SAME — INFANTS — CONTRIBUTORY NEGLIGENCE — QUESTION FOR JURY.

Applying the principles governing the relative rights and duties of pedestrians and drivers at street crossings to this case, where the pedestrian is but a child, the question of deceased's contributory negligence was fairly one for determination by the jury.

Error to Lapeer; Williams (William B.), J. Submitted April 22, 1921. (Docket No. 11.) Decided October 3, 1921.

Case by Frank H. Church, administrator of the estate of Merle Church, deceased, against Albert Stoldt for the negligent killing of plaintiff's decedent. Judgment for plaintiff. Defendant brings error. Affirmed.

*Theo. D. Halpin,* for appellant.

*B. F. Reed,* for appellee.

STEERE, C. J. While driving east along Genesee street in the city of Lapeer, on his way from Saginaw to his home near Imlay City, defendant's touring car struck and fatally injured plaintiff's daughter, Merle Church, a girl 10 years old, as she was crossing Genesee street at its intersection with Main street along which she was going south on her way home from school. She was carried into the high school building located at the northwest corner of that crossing, where she died soon after her father and a physician who had been summoned arrived. Under the survival act plaintiff recovered in this action a verdict for her estate of $1,547.08.

The accident occurred on the afternoon of October 17, 1916, shortly after schools had closed for the day, at a time when numerous pedestrians, including school children, were passing that four corners in different directions.    The intersection is a busy crossing of two much traveled thoroughfares.    Through traffic between Lapeer, Flint and Davison pass over it, as well as much local traffic, including taxicabs and other vehicles going to and from the Michigan Training School.    Many pupils attending the high school located there and a ward school on Main street a few blocks to the north pass there.

Merle Church was a bright, healthy child of normal size and mentality for her age, a fourth grade pupil attending the Main street ward school north of Genesee street, south of which she lived.    On that day she and a little girl companion on their way home from school went south together on the west walk of Main street, both having on roller skates. About the time they reached the crossing two teams drawing empty hay wagons were crossing Main street going west along the north side of Genesee street, driven by two brothers named John and Samuel Taylor, who were returning home from delivering their loads at an elevator.    John was in front and his passing checked the progress of persons walking south on Main street.    Observing several girls waiting at the north curb of Genesee street for an opportunity to cross, Samuel stopped his team before he reached the crosswalk to let them pass.    He did not particularly notice the Church girl nor defendant's auto until about as it struck her when he saw it pass him and run across Main street before stopping and at the same time saw the girl lying in the road. ᐧ He testified that as he saw the car at and just after the accident it had in his opinion a speed of "20 miles or better" when it struck the girl.    The speed of

the car as it hit the child is variously estimated by
other witnesses, from defendant's claim of "less than
10 miles an hour" to "from 20 to 25 miles an hour."
James Daniels, an experienced driver who had owned
a car of the same make as defendant's for 3 years
and driven from 8,000 to 10,000 miles each year,
testified, "you could stop that car driven at 10 miles
an hour on a dirt road inside of 3 feet." Defendant's
car ran across Main Street and beyond before stopping.
Measurements from the crosswalk where the girl was
struck to the point where witnesses testified the car
stopped showed the distance to be over 90 feet. De-
fendant testified that as soon as he hit the girl he
stepped on both brakes and tried to stop as quick
as he could. On cross-examination he answered,
"If I was only going 10 miles an hour, I can't account
for it going the length of the car after I applied the
brakes." He did, however, during his testimony, ac-
count for his car finally stopping east of Main street
by the explanation that he did stop it immediately,
but "got kind of excited and I got up and forgot to
pull the lever and the car went into gear again, and
she ran down hill across Main street down where the
car finally stopped before I got squared around and
stopped it."

This was the second car defendant had owned. He
was an experienced driver, had driven past that corner
before and knew a schoolhouse was located there.
On that day he was driving with all side curtains on
the left side of his car towards the schoolhouse he
was passing. Of the situation and his knowledge upon
the subject he testified in part as follows:

"When I approached that crossing I didn't see any-
thing in the street, but I saw the kids playing around
there; I saw a couple of teams coming. I passed the
first near the walk there, somewheres. I was on the
right side of the road, and I should judge there must
have been six or seven feet, anyway, away from the

team I passed. I didn't see nothing on the road as I approached the crosswalk until I hit the girl. I didn't see her until the car hit her. * * * I knew there was a schoolhouse there on that corner and I had it in mind as I approached that intersection. I saw the children playing all around there. * * * I do not remember seeing any girls on the crosswalk. The children I saw were on the walk and playing around. * * * I did not have in mind that some one might step from behind that wagon as it passed over the crosswalk. That didn't occur to me,—I kind of think I did have it in mind that some one might step from out behind the wagon. I couldn't say why I say now I did and a moment ago I said I didn't. * * * I was looking all I could, and sure I was looking at the rear of that wagon. * * * I do not know how far I was east of the crosswalk when the car made the first stop. I do not know how fast I was going."

Defendant's counsel recognizes there was abundant evidence of his negligence to carry that question to the jury but urges that a verdict should have been directed in his favor on the ground of contributory negligence; and that in any event there is reversible error in the court permitting plaintiff's counsel when examining jurors on their *voir dire* to inquire of each juror who owned an automobile whether he was a member of or held a policy in the Citizen's Mutual Automobile Company of Howell.

The record shows 17 jurors were interrogated on that subject by plaintiff's counsel, 9 of them before any objection to that line of inquiry was interposed. Plaintiff's counsel then challenged a juror for cause on the ground he was shown to have a policy in the company, to which defendant's counsel objected and the court at first overruled the challenge, but after argument of the question by counsel in the absence of the jury decided the challenge was well taken. Defendant's counsel then interposed a challenge to

the entire panel on the ground that plaintiff's repeated questioning of jurors as to their being insured was for the purpose of getting before them "the fact there was a policy in the case," was manifestly improper, prejudicial and not in good faith. The point was thereafter saved by objection to all questions upon the subject when asked of succeeding jurors.

Of the juror excused it can well be contended as the record then stood that plaintiff's challenge for cause was not tenable, for the insurance company mentioned was not a party to the action nor defendant shown to be insured by it and the presumed objective of any permitted *voir dire* examination upon that subject was necessarily limited to peremptory challenge. But error does not necessarily follow when the court through abundance of caution to secure an impartial jury excuses a juror on ground not technically sufficient to support a challenge for cause, as it would in retaining one who is challenged and ought to have been rejected (*Atlas Mining Co.* v. *Johnston,* 23 Mich. 36). No objection appears to have been made by defendant to the juror called in place of the one rejected beyond that urged against all the others. Defendant is not shown to have exercised all of his peremptory challenges nor to have then questioned the competency and impartiality of the jury as finally constituted, except as affected by plaintiff interrogating them relative to their connection with the named insurance company. The court had discretionary powers within the limit exercised.

Upon the question of disqualification of a juror by reason of membership in a mutual insurance company not a party to but interested in the litigation counsel cite *City of Detroit* v. *Railway,* 134 Mich. 11, where it was held the interest of a taxpayer in a litigating municipality did not disqualify him from serving as a juror. When that case was decided taxpayers in

counties were by statute made competent jurors in any action to which the county was a party, but the provision did not then include cities or townships as it now does (3 Comp. Laws 1915, § 12599), and, although the authorities upon the subject in the absence of statutory provisions were not agreed, the court found that the practice in this State was in harmony with a cited line of authority sustaining the contention that the remote interest of a taxpayer in a municipality was not sufficient to exclude him from serving as a juror because interested in the result of the trial. It has, however, been expressly held in this State that members of a mutual fire insurance company were disqualified from serving as jurors in an action to which it was a party (*Martin* v. *Insurance Co.*, 139 Mich. 151). On principle it would seem to make little difference whether or not the company was in form made a party to the action if it had contracted to indemnify the defendant against whom it was planted.

Upon the claimed prejudicial effect of plaintiff's counsel interrogating jurors on their *voir dire* as to their holding policies in a named mutual insurance company and thereby implying its interest in the litigation, counsel cite *Kerr* v. *Manufacturing Co.*, 155 Mich. 191; *Hughes* v. *City of Detroit*, 161 Mich. 283 (137 Am. St. Rep. 504); *Morrison* v. *Carpenter*, 179 Mich. 207 (Ann. Cas. 1915D, 319); *Fitzgerald* v. *Railway*, 206 Mich. 273; *Sherwood* v. *Babcock*, 208 Mich. 536; *Grubaugh* v. *Simon J. Murphy Co.*, 209 Mich. 551. All of those cases with one exception relate to attempts by plaintiff's counsel after the jury had been selected and during the trial to show that defendant was indemnified by insurance, most of them in his address to the jury. In *Grubaugh* v. *Simon J. Murphy Co.*, *supra*, plaintiff's counsel sought to introduce the

subject early in the case by interrogating defendant's counsel as to whether he appeared for an interested insurance company and emphasizing the fact that an insurance company was the real defendant after an adverse ruling by the court.   A careful examination of the record in the instant case shows that plaintiff's counsel went no further than to ask the direct question of jurors when examined on their *voir dire* if they were insured in the mutual automobile insurance company named.

The question of right to inquire of jurors as to their being insured in an indemnifying company not a party to the action before they are accepted is one upon which considerable authority is to be found, including several decisions in our own State.   This court has drawn the line at interrogating jurors on the subject while the jury is being selected, which at that stage of the proceedings is apparently limited to determining the advisability of a peremptory challenge.   Beyond that point the subject is strictly excluded and further reference to it in presence of the selected jury is held prejudicial error.   The later rulings of this court upon the question are foreshadowed in the case of *Peter* v. *Railway Co.*, 121 Mich. 324 (46 L. R. A. 224).   It there appeared inferentially from examination of jurors on their *voir dire* that insurance companies were interested in the result of the action.   Counsel emphasized that fact in summing up the case and the court without questioning the right to interrogate jurors upon that subject while a jury was being selected said that the—

—"comment of counsel as to the amount of capital stock of the insurance company was untimely, and should have been omitted.   We need not determine whether this comment was damaging error not cured by the charge, as the case must go back on other grounds."

Justice Grant there said, in a dissenting opinion upon other grounds:

"It was certainly proper to examine these jurors as to their relations with these companies, and to ascertain if they had any interest in them. It was therefore impossible to keep the fact from the jury. The court, in the most emphatic language, instructed them that this action was properly brought, that they must dismiss from their minds all consideration of the question of insurance, and must give the full value of the lumber regardless of the insurance, if the defendant was liable. Under this state of facts, I think that the appellate court should assume that the jury followed the instructions. * * * The fact was necessarily before the jury, and the court did all that could be done to prevent any prejudice on the part of jurors."

In subsequent decisions this court has in effect indorsed these views. Such is the import of cases cited by defendant wherever the question is touched, to which may be added *Snyder* v. *Mathison,* 196 Mich. 378; *Link* v. *Fahey,* 200 Mich. 308; *Webster* v. *Stewart,* 210 Mich. 13.

In the present case plaintiff's counsel made no reflecting comment and said nothing about insurance before the selected jury during the trial or when examining them as to their qualifications, beyond asking the question as stated. Defendant was not even shown to be insured or that any insurance company was interested.

The trial court instructed the jury in emphatic language that no question of insurance was before them, they should entertain no impressions about it, the case was between plaintiff as administrator of his daughter and defendant Stoldt, concluding:

"And I say to you that you would violate the sanctity of your oaths if you would allow the question whether he is or is not insured to enter your minds or influence your judgment in this case."

It is a generally recognized rule that much latitude may be allowed by the trial court in examination of jurors on their *voir dire* to enable parties to intelligently exercise their right of challenge, either peremptory or for cause. Within reasonable range the latitude of such examination is discretionary with the trial court, which has the power whenever the examination is unduly protracted or it appears questions are not in good faith and for prejudicial purposes to summarily check counsel. As against the discretion of the trial court we are not satisfied that the questions complained of were not asked in good faith to enable plaintiff's counsel to intelligently exercise his right of peremptory challenge.

In support of the contention that a verdict should have been directed for defendant because of decedent's contributory negligence counsel cite the following cases: *Zoltovski* v. *Gzella,* 159 Mich. 620 (26 L. R. A. [N. S.] 435, 134 Am. St. Rep. 752) ; *Mollica* v. *Railroad Co.,* 170 Mich. 96; *Tolmie* v. *Taxicab Co.,* 178 Mich. 426; *Hill* v. *Lappley,* 199 Mich. 369; *Fulton* v. *Mohr,* 200 Mich. 538; *Deal* v. *Snyder,* 203 Mich. 273; *Flintoff* v. *Lighting Co.,* 208 Mich. 527; *Hayes* v. *Norcross,* 162 Mass. 546 (39 N. E. 282). While analogous in certain respects, those cases so differ from this in various essential facts as not to be of controlling value upon the question of decedent's negligence. One marked distinction is that none of the cases involve an injury to a pedestrian by a motor vehicle at a street crossing except the *Tolmie Case,* where in broad daylight a man of mature years and large experience upon the streets as a teamster walked into the path of an approaching taxicab in plain view to him from the time he started to cross, which companions by his side readily observed and avoided. That accident occurred at a quiet crossing with no other vehicles near and no confusion of passing teams

or pedestrians to distract his attention.    The conditions surrounding this little girl at the busy crossing where she was run over were radically different.

Upon that phase of the case the inquiry is limited to whether facts existed carrying the question of the girl's negligence to the jury measured by her age, intelligence and experience so far as disclosed.    When she and the little girl with her on their way home from school along the west walk of Main street approached the Genesee crossing they with others were temporarily stopped by the traffic on the latter street. She was in the lead a short distance ahead of her companion, and stopped when down the incline of the walk near the edge of the curb as John Taylor was driving across it closely followed by his brother Samuel who, noticing the children waiting, stopped his team, leaving the walk clear for them to cross.    This was in effect an invitation for those waiting on the walk to go ahead, a significant thing as bearing upon the girl's negligence.    On seeing this man up in his wagon facing west with a clear view down Genesee street in that direction stop his team to leave the walk clear for them to cross over the street ahead of him, it would not be unnatural for a little girl stopped by traffic at the curb to take his conduct as an assurance that those waiting could safely proceed.    Of her conduct at that time Ethel Fisher, a high school student 19 years of age who was standing back of the curb and on higher ground, testified she saw Merle Church standing in front of her by the curb and looking around as John Taylor's team and wagon passed over the crosswalk, and when Samuel Taylor stopped his team with the heads of his horses far enough from the crossing "so there wasn't any danger of getting hurt" the girl looked both ways, "to the east and west and started ahead;" that she did not skate, but walked on her skates "just ordinary walking,"—did

not hurry but went at "an ordinary walk"—and was struck by defendant's automobile just after she passed the rear of John Taylor's wagon. This witness had driven and timed automobiles, observed them running at different rates and made estimates of their speed, was familiar with speed limits in cities, had estimated whether passing cars were within the law, and noted the speed of defendant's car just before and at the time of the accident. Asked at what rate of speed it was going when it struck the girl she replied, "Well, the lowest estimate, from 20 to 25 miles an hour."

Counsel for defendant urged it was the duty of plaintiff's decedent to look to the west immediately on passing out from behind John Taylor's wagon and she was guilty of contributory negligence in not doing so. On the court's refusal to direct a verdict for defendant his counsel tendered and the court submitted to the jury the following special question:

"Did Merle Church, as she passed from behind John Taylor's wagon and while she was yet a safe distance from the automobile, look toward the west?"

This the jury answered in the affirmative, and appellant's counsel now contend there was no testimony in the case to warrant an affirmative answer.

Defendant's wife, who sat on the back seat, saw the girl before the car struck her although he did not. She testified that the only indication the girl saw the car was from her actions when she gave a start back, and said, "That is the first I seen of her when she gave her start back, just as though something drew her attention to it." While direct affirmative testimony on that question is meager we are not prepared to say there are no facts and circumstances from which a jury might reasonably draw a favorable inference. Neither are we persuaded under the circumstances of this case that in any event an answer to the question

proposed would furnish the test of the child's negligence as a matter of law. Just what she actually saw, or heard or thought on that occasion cannot be told by her. She may have seen the automobile and misjudged its speed. There was reason for her being upon the street at that place and time. She was not playing in the street or idly loitering upon it, but passing the crossing point on her way home from school in the performance of her duty. She had a right to expect any driver approaching that busy crossing under the conditions shown would exercise reasonable care, by not driving his car over 10 miles an hour and keeping it under safe control as was his duty. Babbitt on Motor Vehicles (3d Ed.), § 385.

The relative rights and duties of pedestrians and drivers at street crossings is discussed and fully stated in the recent case of *Benjamin* v. *McGraw*, 208 Mich. 75. Applying the principles there recognized to the facts in this case, where the pedestrian is but a child, the question of her contributory negligence was fairly within the realm of facts for determination by the jury.

The judgment is affirmed.

MOORE, WIEST, FELLOWS, STONE, CLARK, BIRD, and SHARPE, JJ., concurred.