FOSNESS *v.* PANAGOS.

DECISION OF THE COURT.

1. INSURANCE—VOIR DIRE EXAMINATION—EQUALLY DIVIDED COURT.
   Verdicts and judgments for plaintiffs in action for personal injuries to plaintiff wife and derivative action by plaintiff husband are affirmed by the Supreme Court, equally divided as to whether elicitation of information as to a juror's connection with the insurance business, made before other members of the panel on *voir dire* examination, was reversible error (CLS 1961, § 500.3030; GCR 1963, 500).

SEPARATE OPINION FOR REVERSAL.

DETHMERS, KELLY, and BLACK, JJ.

2. COURTS—RULES OF PRACTICE.
   *The Supreme Court is charged with the primary duty of establishment, modification, amendment, and enforcement of the rules of practice in all State courts (Const 1963, art 6, § 5).*

REFERENCES FOR POINTS IN HEADNOTES

[1, 5, 6, 8, 9, 11, 13, 15, 17, 18, 20–24, 28, 29] 31 Am Jur, Jury § 208 *et seq.*
[2] 20 Am Jur 2d, Courts § 115.
[3] 20 Am Jur 2d, Courts § 111 *et seq.*
[4, 7, 14, 19, 33–35] 8 Am Jur 2d, Automobile and Highway Traffic §§ 1009, 1010; 38 Am Jur, Negligence § 343.
Admissibility, of evidence, and propriety and effect of questions, statements, comments, etc., tending to show that defendant in personal injury or death action carries liability insurance. 4 ALR2d 761.
[10] 20 Am Jur 2d, Courts § 207 *et seq.*; § 225 *et seq.*
[12] 56 Am Jur, Waiver § 2.
[16] 31 Am Jur, Jury § 212 *et seq.*
[25, 26] 8 Am Jur 2d, Automobiles and Highway Traffic § 1013.
[27] 38 Am Jur, Negligence § 2.
[30] 5 Am Jur 2d, Appeal and Error § 702 *et seq.*
[31] 5 Am Jur 2d, Appeal and Error § 709.
[32] 5 Am Jur 2d, Appeal and Error § 562 *et seq.*

3. SAME—JUDICIAL POWER—SUPERINTENDING CONTROL.

The judicial power of the State is vested in one court of justice with respect to which the Supreme Court is general superintendent (Const 1963, art 6, §§ 1, 4).

4. INSURANCE—PERSONAL INJURY ACTION.

It is a peremptory and nondiscretionary court-adopted rule of practice that a plaintiff in an original action against a tortfeasor for personal injuries occasioned by the operation of a vehicle may not inject the element of liability insurance (CLS 1961, § 500.3030).

5. SAME—REFERENCE IN PERSONAL INJURY ACTION—VOIR DIRE EXAMINATION.

Voir dire examination of juror in consolidated actions arising from an automobile accident held, to have been intended to convey information about the existence of insurance in the case and to influence the jury thereby contrary to court-adopted rule of practice set forth in statute, although not referring to defendants' liability insurer or directly to the fact that defendants were insured, especially where jury returned verdicts in publicly well-known minimal requirement of statute (CLS 1961, §§ 257.504, 500.3030).

6. SAME—PERSONAL HISTORY QUESTIONNAIRE OF JURY.

Questions required to be answered in personal history questionnaire of jurors held, to have been designed to supply such information about defendant's liability insurance well before trial, as may bear upon a juror's qualification to serve in actions for personal injuries arising from automobile accidents (CLS 1961, § 500.3030; GCR 1963, 510).

7. SAME—REFERENCE IN PERSONAL INJURY ACTION—MISTRIAL.

Mistrial, timely moved, results from the undertaking of trial counsel to defeat the purpose of the court-adopted rule of trial procedure prohibiting any reference whatever to liability insurer in action for personal injuries arising from operation of vehicles (CLS 1961, § 500.3030; GCR 1963, 510).

8. SAME—VOIR DIRE EXAMINATION—PREJUDICE.

Presumption that matter of insurance and identity of defendants' insurer was prejudicially injected into voir dire examination of a juror by plaintiffs' counsel held, not overcome under record presented, where it is apparent that he was using the personal history questionnaire of such juror as a guide to leading questions asked relative to such juror's connection with the insurance business (CLS 1961, § 500.3030; GCR 1963, 510).

9. SAME—VOIR DIRE EXAMINATION—GOOD FAITH.

*Elicitation of information from a juror on voir dire examination before other members of the jury panel, which information was obtainable from personal history questionnaire or otherwise, in order to get element of liability insurance before jury in personal injury case arising from automobile accident, constitutes a bad-faith effort to circumvent the procedural prohibition against any reference whatever to liability insurance in such an action (CLS 1961, § 500.3030; GCR 1963, 510).*

10. COURTS—FEDERAL—STATE—PROCEDURE.

*Decisions of the Federal circuit courts do not control procedure in the State courts.*

11. INSURANCE—INJECTION IN PERSONAL INJURY CASE—MISTRIAL—WAIVER.

*Waiver of injection of liability insurance on voir dire in actions arising from automobile accident held, not effected, where defendant made 2 motions for mistrial, and motion for new trial based upon such alleged error, although he accepted jury after the voir dire had been completed (CLS 1961, § 500.3030).*

12. WORDS AND PHRASES—WAIVER.

*Waiver is the intentional relinquishment of a known right.*

13. INSURANCE—WAIVER.

*The intentional injection of liability insurance in voir dire in action arising from automobile accident was not waived where defendant did not expressly waive it and trial judge did not state, when he offered to declare a mistrial, that he would renew and enforce his order against such matters, made at chambers, as to how matters that might prejudice the jury should be handled (CLS 1961, § 500.3030).*

14. SAME—INJECTION IN PERSONAL INJURY ACTIONS.

*The prohibition against mentioning liability insurance in actions for personal injuries arising from operation of vehicles applies to plaintiffs, defendants, and their respective counsel (CLS 1961, § 500.3030).*

SEPARATE OPINION FOR REVERSAL.

O'HARA, J.

15. INSURANCE—VOIR DIRE EXAMINATION—REFERENCE IN PERSONAL INJURY ACTION—PERSONAL HISTORY QUESTIONNAIRE.

*Elicitation of information from prospective juror as to her connection with the insurance business, made before other*

members of the panel on voir dire examination, held, to have constituted reversible error in action for personal injuries, where the trial judge had forewarned plaintiffs' counsel about such action, and the information had been obtainable from the juror's personal history questionnaire, since counsel exceeded the rule-adopted statute prohibiting reference to a liability insurer in actions arising from the operation of a vehicle (CLS 1961, § 500.3030; GCR 1963, 16, 510).

SEPARATE OPINION FOR AFFIRMANCE.

T. M. KAVANAGH, C. J., and SOURIS and SMITH, JJ.

16. JURY—EVIDENCE—PRECONCEIVED OPINIONS.

A juror should be free from any preconceived opinions which might cause him to return a verdict not based solely upon the evidence produced at trial, contradistinguished from the earliest common-law jury consisting of neighbors of the litigants who were called in to decide the legal controversy upon the basis of their personal knowledge of disputed facts.

17. SAME—VOIR DIRE EXAMINATION.

Voir dire examination is a means by which it has been sought to assure juror impartiality and during such examination questions may be put to prospective jurors to determine whether they have any predispositions which would prevent them from rendering an impartial, evidence-grounded verdict.

18. SAME—SCOPE OF VOIR DIRE EXAMINATION.

The scope of questions asked at a voir dire examination should not be so restricted as to impede the elicitation of information which counsel needs in deciding whether a prospective juror is in fact impartial and otherwise is satisfactory, yet should not convey information to the panel which could predispose its members to a certain decision.

19. INSURANCE—REFERENCE IN PERSONAL INJURY ACTION.

The statutorily-expressed prohibition against joinder of defendants' liability insurer, against referring to such insurer, and to the fact that defendants were or were not insured, in an action to recover damages for personal injuries arising out of an automobile accident is a rule of practice adopted by the Supreme Court through application of its court rules stating that statutory rules of practice shall be deemed to be in effect until superseded by conflicting rules adopted by the Supreme Court (CLS 1961, § 500.3030; Court Rule No 1, § 3 [1945]; GCR 1963, 16).

20. SAME—REFERENCE IN PERSONAL INJURY ACTION—VOIR DIRE
EXAMINATION.

*Inquiry on voir dire examination into matter of prospective
juror's possible bias in a personal injury action arising out
of automobile accident as a result of her husband's being
engaged in the insurance business is not precluded by court-
adopted, statutorily-expressed rule of practice prohibiting the
joinder of the liability insurer in such action, making refer-
ence to such insurer or to the fact that defendants were
or were not insured during the course of trial (CLS 1961,
§ 500.3030; Court Rule No 1, § 3 [1945]; GCR 1963, 16).*

21. SAME—REFERENCE IN PERSONAL INJURY ACTION—VOIR DIRE
EXAMINATION.

*Questions asked on voir dire examination in personal injury
cases arising out of automobile accident which did not refer
to defendants' liability insurer nor to the fact that defendants
were or were not insured held, not to have been barred by
court-adopted statutory rule of practice prohibiting joinder
of defendants' liability insurer, reference to such an insurer,
or to the fact that defendants did or did not carry such
insurance, during the course of trial (CLS 1961, § 500.3030;
Court Rule No 1, § 3 [1945]; GCR 1963, 16).*

22. SAME—REFERENCE IN PERSONAL INJURY ACTION—VOIR DIRE
EXAMINATION.

*Elicitation of information by plaintiffs' counsel from prospective
juror as to her connection with her husband's insurance busi-
ness, essential to making an intelligent choice of whether
or not to challenge her peremptorily or for cause in personal
injury actions arising from automobile accident held, not
to have violated the court-adopted statutory rule of practice
prohibiting joinder of defendants' liability insurer, reference
to such insurer or to the fact that defendants did or did not
carry such insurance, during the course of trial, hence, denial
of mistrial immediately after the voir dire examination of such
prospective juror was not erroneous (CLS 1961, § 500.3030;
Court Rule No 1, § 3 [1945]; GCR 1963, 16).*

23. SAME—REFERENCE IN PERSONAL INJURY ACTION—VOIR DIRE
EXAMINATION—GOOD FAITH.

*The good faith of counsel in venturing upon a voir dire exam-
ination, even one which is relevant and not expressly forbid-
den by court-adopted statutorily-expressed rule of practice
forbidding joinder of defendants' liability insurer, reference
to such insurer or to the fact that defendants did or did not*

carry such insurance, in a personal injury action arising out of an automobile accident, will be determined to a large extent by what the record shows of his diligence in seeking the information he needs by means available to him before the voir dire commences (CLS 1961, § 500.3030; Court Rule No 1, § 3 [1945]; GCR 1963, 16).

24. SAME—VOIR DIRE EXAMINATION—GOOD FAITH.

Voir dire examination of a prospective juror upon matters relating to insurance, conducted in good faith, should be permitted to allow counsel intelligently to exercise his right of challenge where further inquiry may be suggested by answers to personal history questionnaire required of jurors if the subject of inquiry is not proscribed by court-adopted rule of practice expressed in statute barring joinder of defendants' liability insurer, reference to such insurer and to the fact that defendants did or did not carry such insurance, in a personal injury action arising out of an automobile accident, but such permitted inquiry should be under judicial supervision and precautionary procedures in order to prevent prejudicial perversions and risk of mistrial (CLS 1961, § 500.3030; GCR 1963, 510).

25. AUTOMOBILES—CONTRIBUTORY NEGLIGENCE—DIRECTED VERDICT—EVIDENCE.

Defendants' claim that plaintiffs in action for personal injuries arising from collision between car in which they were riding and defendants' car were guilty of contributory negligence as a matter of law held, not tenable under evidence presented when taken in light most favorable to plaintiffs, hence directed verdicts were not justified.

26. NEGLIGENCE—QUESTION FOR TRIER OF FACT.

Generally, the question of negligence is a question of fact and not of law.

27. SAME—DEFINITION—ACTION OF OTHER PERSONS.

Negligence consists in a want of that reasonable care which would be exercised by a person of ordinary prudence under all the existing circumstances, in view of the probable danger of injury, and, if the danger depends at all upon the action of any other person, the prudence of the party charged with negligence must be estimated in view of what he had a right to expect from such other person.

SEPARATE OPINION FOR AFFIRMANCE.

ADAMS, J.

28. INSURANCE—PERSONAL INJURY ACTION—VOIR DIRE EXAMINA-
TION—TRIAL.

*Insurance code provision prohibiting mention of liability insur-*
*ance in actions for personal injuries arising out of operation*
*of vehicles has been interpreted to ban the injection of the*
*element of liability insurance either on voir dire or during*
*trial of the action (CLS 1961, § 500.3030).*

29. SAME—PERSONAL INJURY ACTION—VOIR DIRE EXAMINATION—
WAIVER.

*Error committed in injection of element of liability insurance*
*by plaintiffs' counsel in voir dire examination in actions for*
*personal injuries arising out of automobile accident held, not*
*reversible, where trial judge's subsequent offer of a new jury*
*panel was declined by defendant (CLS 1961, § 500.3030).*

30. TRIAL—REVERSIBLE ERROR.

*Reversible error is not something to be sought but, rather, to*
*be avoided.*

31. SAME—WAIVER OF IRREGULARITIES.

*Errors and irregularities in the proceedings preliminary to the*
*trial may be waived and cured by some affirmative act of the*
*complaining party amounting to an express or implied assent*
*to the procedure.*

32. APPEAL AND ERROR—WAIVER OF EXCEPTIONS.

*A waiver of exceptions that have been properly taken and saved*
*in the trial court may be made where the party takes a step*
*or adopts a course directly inconsistent with the exception*
*previously taken by him to the ruling.*

33. JURY—INSURANCE.

*Insurance is so much a fact of life it is unrealistic to expect that*
*it can be completely excluded from the minds of jurors.*

34. TRIAL—INSURANCE.

*The focus of a trial ought always to be upon the merits of the*
*controversy and the effect of the fact of insurance should be*
*eliminated from the jury's performance of its duty by a judge's*
*conduct of the trial (CLS 1961, § 500.3030).*

35. INSURANCE—JURY.

*Juries are bound to assume, in view of statutes presently in*
*force, and in view of the fact of insurance generally, that an*

*insurer stands behind one or possibly both litigants but such assumption does not mean an end to jury trials or that juries no longer are able to decide issues between actual parties to litigation.*

Appeal from Wayne; Gilmore (Horace W.), J. Submitted June 10, 1965. (Calendar Nos. 10, 11; Docket Nos. 50,698, 50,699.) Decided December 7, 1965. Rehearing denied February 8, 1966.

Declaration by Constance Fosness against George Panagos and Anna Panagos for alleged injuries inflicted on October 8, 1960, when an automobile driven by defendant struck an automobile driven by plaintiff. Derivative action by Harold Fosness. Verdicts and judgments for plaintiffs. Defendants appeal. Affirmed by an equally divided court.

*Goodman, Crockett, Eden, Robb & Philo (Dean A. Robb* and *Sheldon M. Meizlish,* of counsel), for plaintiffs.

*Sullivan, Sullivan, Hull & Ranger (Robert E. Sullivan,* of counsel), for defendants.

BLACK, J. (*for reversal*). By the Constitution this Court is charged with the primary duty of establishment, modification, amendment, and enforcement of the rules of practice in all Michigan courts (Const 1963, art 6). Indeed, now that "The judicial power of the State is vested exclusively in one court of justice" (Const 1963, art 6, § 1), with respect to which the Supreme Court is general superintendent (Const 1963, art 6, § 4), this is the place where the procedural buck finally stops. And since rules of practice like rules of substantive law are of value only to the extent of their enforcement by those who are responsible for such enforcement, today's simple

question is whether this constitutionally appointed superintendent is to remain insistent upon honest and nonevasive respect for one of its peremptory and nondiscretionary rules of practice; referring to the rule which, ever since 1929, was purposefully intended to ban the injection, in "such original action," of the element of liability insurance. See CL 1929, § 12460; now section 3030 of the insurance code (Act No 218) of 1956 (CLS 1961, § 500.3030 [Stat Ann 1957 Rev § 24.13030]).

Said section 3030 was formally adopted as a rule of practice in *Darr* v. *Buckley,* 355 Mich 392. That case came to careful consideration and decision in 1959, prior to Justice Souris' appointment to the Court. As here in Fosness, Judge Gilmore of the third circuit presided over that jury trial. The judge on that occasion duly enforced section 3030 in the context of our instant controversy, that is, the *voir dire* examination of assembled and called veniremen. We affirmed his action, unanimously. At the same time suggestions were written into this Court's opinion whereby counsel seeking in good faith information he does not have, concerning the qualifications of summoned jurors, might obtain it without violating the rule and enduring the perils of such violation.

A year after *Darr* was handed down, that case was followed and applied (*DeGroff* v. *Clark,* 358 Mich 274, 276):

"It is evident that plaintiff's counsel requested and induced the court to direct the insurance question to the jurors, not for the purpose of eliciting information from them touching on their qualifications to sit as jurors, but for the purpose of conveying information to them about the existence of insurance in the case and influencing them thereby. The size of the verdict against the background of the record in this case would indicate that it did influence them.

There is no need to review the law and previous decisions of this Court on the subject. Enough was said by Mr. Justice BLACK in *Darr* v. *Buckley*, 355 Mich 392. See, also, *Holman* v. *Cole*, 242 Mich 402, and *Palazzolo* v. *Sackett*, 245 Mich 97. Decision therein is conclusive of a holding of reversible error here."

Last year, in *Felice* v. *Weinman*, 372 Mich 278,[1] said section 3030 was enforced again, that time against a defendant and his counsel. So, for the cases before us, the skilled trial counsel for these plaintiffs must be taken as having known aforethought that any verdict or verdicts he might obtain below would be imperiled automatically by his conduct during the *voir dire;* conduct which was both unnecessary and flagrantly purposeful.

The record speaks from here. At chambers, prior to the *voir dire* and stimulated by certain pretrial motions "to exclude" (see appendices 2 and 3, *post*), Judge Gilmore warned counsel as follows:

"I will say, generally, to both counsel, so that we don't get into the possibility of a mistrial, if there are matters of law that could prejudice the jury, both of you are experienced enough to know that you should ask to have the jury excluded, and once it is

---

[1] *Felice,* at 280:

"No matter how any counsel may dress up his excuse for having brought forth—directly or indirectly by questioning of witnesses or by statement in the presence of the jury—the fact that an invisible defendant stands behind 1 or the other or both of the parties at bar, he must be judged guilty of having violated a standing rule of court this Court is trying to enforce. By this time surely, counsel should know better. For amplification, see *Darr* v. *Buckley,* 355 Mich 392.

"The ban of the rule is written in simple English. It applies to plaintiffs and defendants—and to their respective counsel—with equal force. Violation thereof places counsel in position where, the point having been timely raised and saved, he must by persuasive showing overcome a presumption that what occurred, whether intentional or otherwise, was prejudicially improper. There is no such showing here, nor could there be. It follows that plaintiffs' second motion for mistrial, made prior to return of verdicts by the jury, should—then and there—have been granted."

excluded we can fully and completely settle the matter."

Despite this, plaintiffs' counsel at no time sought leave to develop, during the *voir dire,* the insurance-suggestive questions and answers which appear on juror Ada M. Bloom's "personal history questionnaire." See GCR 1963, 510.1. He just went ahead, bodaciously as presently quoted.[2]

Mrs. Bloom was temporarily seated as juror No 12. When his turn came Mr. Robb questioned her as follows:

*"By Mr. Robb:*
"*Q.* Mrs. Bloom, you were a teacher at one time, and now you are a housewife, is that correct?
"*A.* Right.
"*Q.* What does your husband do?
"*A.* He has an insurance agency, general insurance.
"*Q.* Where is this insurance agency located?
"*A.* Northville, Michigan.
"*Q.* What is the name of the insurance agency?
"*A.* C. Harold Bloom Agency.
"*Q.* What companies does he represent?
"*A.* I don't know.
"*Q.* Does he write automobile insurance?
"*A.* Yes; and fire.
"*Q.* For a number of different companies?
"*A.* Yes. Many.

---

[2] Plaintiffs' counsel, Mr. Robb, supplied as author that portion of the latest volume of Am Jur Trials (vol 9) which commences on page 428 and ends at page 512. On pages 460 and 461 of the volume, under subheading "§ 19.   In General; Pretrial Motions to Exclude Prejudicial Matter," Mr. Robb wrote up his own duty as it stood when Judge Gilmore warned and instructed both counsel as quoted above.   The text to which reference is made reads:

"Appropriate motions may be made by defense counsel to bar the plaintiff's attorney from mentioning or suggesting that an insurance company will pay any damages awarded, or that the defendant will never be personally liable for any verdict brought in against him."

See Mr. Robb's own "motion to peremptorily exclude reference to certain matters during trial" (Appendix 2, *post*).

"*Q.* Many different auto companies?

"*A.* No. Mainly, Auto Owners. But he does have others.

"*Q.* Would the fact that your husband is in the insurance business make you favor one side or another in this case?

"*A.* No, it would not.

"*Q.* Have you had anything to do with the operation of the business?

"*A.* No.

"*Q.* Of taking reports?

"*A.* Nothing.

"*Q.* Your agency is out of your home then?

"*A.* Right.

"*Q.* The only thing you would be doing would be hearing your husband talk about his work?

"*A.* Occasionally.

"*Q.* Does he handle, in this agency, everything? If a policyholder has an accident, does he take the report?

"*A.* Yes.

"*Q.* And take care of it?

"*A.* He does no adjusting.

"*Q.* Not adjusting. But he takes care of the policyholders in all areas?

"*A.* Right.

"*Mr. Robb:* I have nothing further at this time."[3]

After the jury was sworn, but prior to commencement of the trial proper, defense counsel moved for a mistrial. The connected record again:

"*The Court:* You have a motion, I understand, Mr. Sullivan, that you want to make before the jury is brought in?

---

[3] Mrs. Bloom's said questionnaire, to which all counsel per rule had previous ready access, is attached in appendix form. A comparison of the questions and answers appearing therein, with the foregoing questions and answers, supplies damning proof that the purpose of the quoted open court interrogation was that of "conveying information to them [all veniremen present in the courtroom] about the existence of insurance in the case and influencing them thereby." The quotation is from *DeGroff, supra,* p 276.

"*Mr. Sullivan:* Yes. The defendants in this case move for a mistrial on yesterday's *voir dire* examination of Juror Ada Bloom, No. 70, from box 3.

"It developed that she was the wife of an insurance agent, and the interrogation by counsel for the plaintiffs went beyond what would be proper and permissive in the *voir dire.* The questions asked were designed not to obtain information, but to convey information that there were insurance companies involved in this matter, and the innuendo and the connotation was clearly that of an insurance company on the part of the defendants, contrary to the statute, because these questions were asked:

"What insurance companies did her husband represent? Did he sell automobile insurance? Was he involved in the sale of automobile insurance? And he asked a series of about 8 or 9 questions which I'm handicapped now to repeat verbatim because I do not have the record. But all of them were clearly designed to connote the idea that there was insurance involved in this automobile accident case.

"I feel certainly it went beyond what would be proper, and was designed to convey information and not obtain it from the prospective juror. We move for a mistrial.

"*The Court:* I remember the interrogation of the juror very well. I do not think that the question of insurance has been so injected in here that it would require a mistrial. I will deny the motion.

"Now, gentlemen, as I advised you earlier, Juror No. 12's father died last night, and we just have 11 jurors. We are in a situation where we have not had an opening statement yet, and I am willing to do any one of three things:

"First, proceed with 11 jurors; second, bring up a panel and impanel one juror to give us 12; or third, discharge this jury completely and impanel a whole new jury.

"It is my understanding, after the conversation that we have had, that it is agreed the way we will

handle this is to impanel a 12th juror. Mr. Robb agrees to this, understanding that he has no peremptory challenges left; and Mr. Sullivan agrees, knowing he has only one peremptory challenge left.

"Is that agreed?

"*Mr. Robb:* Yes.

"*Mr. Sullivan:* Yes."

As said above, the record speaks. It speaks of patently reversible error for calculated violation by counsel of both the letter and purpose of a simply worded and well-known rule of trial conduct, and for complementing failure of the trial judge to enforce that rule as done by him in the *Darr Case.*

To the above a fact of circumstantial significance should be added. The jury reported a total verdict of $20,000 for the two plaintiffs. That amount is the publicly well-known minimal requirement, respecting two or more causes arising out of the same accident, of the financial responsibility act (CLS 1961, § 257.504 [Stat Ann 1960 Rev § 9.2204]). The jury having been pretty well informed that an invisible defendant stood back of the defendants in a financial way, and yet being in the dark as to the amount of coverage, it is an eminently fair inference that the question of amount of the total verdict to be rendered was the primary subject of concern in the juryroom; also that such total was agreed upon in that room with view toward the statutory minimal and the consequent protection of the defendants from monetary loss. To which it is fair to add that said section 3030 was designed to avoid just such nonmeritorious verdicts.

This brings today's inquiry to Justice Souris' assigned reasons for return to pre-*Darr* days of judicial irresolution; the days when our current issue was known as a "vexatious subject." (It never needed to be, as the years since handing down of *Darr* have proved in our trial courts.)

Having included in his opinion the same portion of the *voir dire* which appears above, Justice SOURIS writes that "None of the questions quoted referred to defendants' insurer nor to the fact that defendants were insured."

Now if I understand this rightly, the counsel must refer directly to "defendants' insurer," or directly to the fact that "defendants were [are] insured," in order to violate said section 3030. It is proposed that he be safe henceforth, so far at least as said section 3030 is concerned, as long as he refrains with care from reference to the *defendant's* insurer, or to the fact that the *defendant* is insured.[4] Above all, counsel are now to be told that *voir dire* cross-examination may be made, without offense to said section 3030, from the questionnaire of anyone called up whose Rule 510 responses disclose food for open court suggestion of the element of liability insurance; which is just what counsel for these plaintiffs did.

Indubitably, this is not the stuff that dreams are made of. This is the way a statute (even one the Court has formally adopted as a part of its adjective system) is to be gutted by the devious scheming of counsel and the philosophic indulgence of judges. It does not matter that the legislative purpose as written has remained steadfast for a series of consecutive decades (36 years in this instance). It does not matter that *Darr* has long since provided and suggested easy means to obtain, *before the trial,* all desired information about some or any venireman's "contacts with the insurance industry," or about

---

[4] How this is to be done, and assured for what then would be left of section 3030, is not made clear. I suppose it will be the duty of counsel to inform the trial judge, on the record (which incidentally counsel did not do in the case at bar), of the identity by name of "defendants' insurer." Would there be any other way for counsel to establish, when challenged, that he has not violated this new translation of section 3030?

anything pertaining to the element of liability insurance, which information might by some stretch bear upon juror qualification. It does not matter that new Rule 510 was designed, in important part, to supply such information, *well before the trial* (see questions numbered 32 through 41 of Rule 510's form). It does not matter that, scarcely eight months ago, all presently seated members of the Court joined in a *per curiam* opinion which told the profession (*Benmark* v. *Steffen,* 374 Mich 155, 163, 164):

"On the other hand, when skilled trial counsel undertakes—no matter by what cunning subtlety— to defeat the purpose of our court-adopted rule of trial procedure (CLS 1961, § 500.3030 [Stat Ann 1957 Rev § 24.13030]), such act on his part must result in a mistrial provided opposing counsel move in due time therefor. The rule, prohibiting 'any reference whatever  *  *  *  to such insurer,' and prohibiting like reference 'to the question of carrying of such insurance,' means just what it says. All experienced trial counsel, including of a surety trial counsel and both counsel now at bar, know full well how to insure compliance therewith. Indeed, this Court made it doubly plain, first in the *Darr Case* and later the *Felice Case,* that it is firmly determined to enforce section 500.3030 so long as that section remains, as it now is, an effective rule of trial practice."

Looking at these variant and concededly clever schemes to get around section 3030 as such arrive here on appeal, all that seems to matter is that *Darr*-controlled jury trials of the issues that are presented in "the original action," the defendant or defendants being individuals, are not so likely to turn out verdicts for plaintiffs, or higher and ever higher damage verdicts. To be sure, that isn't right. So it is effectively urged upon some of us, albeit by neat in-

direction, that the prohibitory policy which inheres in section 3030 should be amended so that counsel may, during the *voir dire*, pretend that he is asking in good faith for information, information the clerk's record shows he already has in documentary form, and also that he may ask on the *voir dire* for other insurance-suggestive information which, if really needed, was conveniently obtainable on motion made before trial.

A challenging question is due. If *Darr* and Rule 510.1 do not provide *all* within-reason means to obtain—before trial—*all* knowledge about insurance "connections" counsel allege they need; if section 3030 in *any* way restricts securance of such knowledge, why shouldn't the Court expand Rule 510 so as to fill the alleged void? Another section can be added providing *expressly* that counsel may, on motion showing fair cause, have a special and supplemental jurors' questionnaire prepared for distribution to and answer by those called for service during the term. As we shall presently see, such is the Illinois practice. If this Court must bend the knee to counsel who persist in ignoring *Darr, Felice, Benmark* and said section 3030, then such an amendment of the Rule would seem to be the only way left to meet *all* demands of such counsel and still maintain the integrity of section 3030.

Turning to the subject of good faith, Justice SOURIS proceeds:

"Furthermore, plaintiffs' counsel was entitled to know the information he elicited by his examination of Mrs. Bloom in order to determine whether he could challenge her for cause and, if not, whether he should challenge her peremptorily. Had he failed to inquire as he did, he would have had no basis for intelligent choice of the alternative actions available to him in completing the selection of a jury."

So Mr. Robb was "entitled to know the information he elicited by his examination of Mrs. Bloom." I think my Brother has overlooked a fact. Mr. Robb already had "the information he elicited by his examination of Mrs. Bloom" and had it "on the record." See Rules 510.1 and 510.3. Comparison of Mrs. Bloom's juror questionnaire (Appendix 1, *infra*) with Mr. Robb's quoted open court interrogation of the lady discloses that Mr. Robb actually used the questionnaire as a guide to "elicit," by leading questions, the information Justice SOURIS says was sought in good faith. And this is not all. Mr. Robb "elicited" the name of an insurer (Auto Owners) which, for aught the assembled members of the panel knew, was the "defendants' insurer." The identity of "defendants' insurer" was not made known of record until after entry of judgment and the filing of defendants' appeal (see CLS 1961, § 500.3036 [Stat Ann 1957 Rev § 24.13036]).

How can this intellectually honest Court avoid deep concern as it views record impact, upon the jury as sworn, of Mr. Robb's premeditated injection of Auto Owners into the case? We may hardly assume that the assembled jurors *did not* conclude from what went on that Auto Owners was the "defendants' insurer" and that the prompt dismissal of Mrs. Bloom was due to her husband's connection with Auto Owners. The presumption is the other way, that what Mr. Robb did "was prejudicially improper" (*Felice, supra* at 280), and he has offered nothing to overcome that presumption.

Point is made that *defense* counsel, not *plaintiffs'* counsel, excused Mrs. Bloom after the insidious seed of insurance had been sowed in the courtroom. It would be more than strange had defense counsel *not* excused the lady, the circumstances considered, and it requires no apperception to grasp the reason for

Mr. Robb's bland willingness to accept Mrs. Bloom as a juror after his deposit in the courtroom had been made. Though the trial judge repeatedly called upon counsel to challenge for cause, Mr. Robb claimed no such right of challenge and proceeded to use up all of his remaining peremptory challenges; *not to eliminate Mrs. Bloom but to eliminate others.* Then, finally, this occurred:

> *"The Court:* * * * Any challenges for cause by anyone?
> *"Mr. Robb:* No, Your Honor.
> *"The Court:* Peremptory, Mr. Sullivan.
> *"Mr. Sullivan:* The defendants are satisfied, Your Honor.
> *"The Court:* All right. Swear the jury.
> (Whereupon the jury was sworn.)"

The real desideratum here is that any experienced defense counsel,[5] confronted thus with an opponent's cute *fait accompli,* must act at once to eliminate from the juryroom one shown to be specially knowledgeable of the liability insurance business and *particularly of the amounts of coverage individual motorists usually carry.* To suggest that defense counsel did not immediately realize that Mrs. Bloom would ascertain, ere the lapse of a few hours, that no insurer represented by her husband was involved, also that he did not realize that the other jurors would be eager to question Mrs. Bloom in the juryroom in regard to the planted subject of liability insurance (and about the amount of insured protection the defendants probably carried), is to imply a curious and record-unwarranted naivete on the part of such counsel.

The following is all that plaintiffs' counsel seems able to muster in support of his conduct (p 22, plaintiffs' brief):

---

5 This one was; see Judge Gilmore above.

"The rule against the injection of insurance into a civil case is designed to protect insurance companies against jury verdicts influenced by the question of insurance. While insurance is not a valid consideration in jury deliberations, it cannot be argued that a plaintiff has no right to protect himself from prejudice, where—as in the instant case— one of the jurors has significant contacts with the insurance industry. The rule against the injection of insurance was designed as a shield for insurance companies, not as a sword."

This has been submitted to us by a counsel who knew, prior to open court questioning of Mrs. Bloom, all he needed to know about her "significant contacts with the insurance industry"; a counsel who, when Mrs. Bloom was called up, failed (without then or subsequent deign of excuse) to comply with Judge Gilmore's previous order to say "I have a matter of law to take up with the court" (see appendix 3); *a counsel who failed* (if really concerned) *to propose when she was called up that Mrs. Bloom be excused* (either for cause or by the court on agreement of counsel),[6] thus insuring for his clients that protection "from prejudice" it is alleged he was seeking, and thus insuring due compliance with Judge Gilmore's previous admonitory order.[7] And yet it is suggested that a want of good faith on the part of such counsel has not been made to appear.

Justice Souris refers to *Kiernan* v. *Van Schaik* (CA 3), 347 F2d 775, and quotes therefrom. Now when a member of a State Court of last resort, cast-

---

[6] On at least three occasions Judge Gilmore excused called jurors from participation after having authorized counsel to "approach the bench." On two occasions that was done before any interrogation of the excused jurors had commenced.

[7] No mention of this order, or of Mr. Robb's almost immediate scorn thereof, appears in the opinions of the Brethren standing for affirmance. Have our trial courts, and this Court in turn, become so weak that they cannot or will not enforce a meanfully proper order like that?

ing about for support of a newborn view of that which has been firmly established as a distinct part of his State's *procedural* system, finds himself compelled to turn to one only of the not exactly harmonious Federal circuit courts, it is necessary only to posit the fact of irrelevant citation. We have *our* rule of procedure; a rule which reflects the policy of *our* State; a policy *our* legislature declared and has maintained since 1929; a policy *we* have adopted formally as a rule of court. That policy supposedly prevails in Michigan no matter the policy elsewhere. And I am sure all of us know that the Federal system provides no counterpart of said section 3030, and no comprehensive before-trial information service such as Rule 510 extends to our trial lawyers and trial judges.

Even if decisions of the circuit courts of the United States did control procedure in the State courts (which they do not), why should we pick the third circuit over the nearby seventh circuit? See *Lentner* v. *Lieberstein* (CA 7), 279 F2d 385, which *Kiernan* expressly refused to follow (pp 780, 781). If such a choice has to be made by this Court, it appears rather clearly that the practice approved in *Lentner* is kin rather than foreign to ours. *Lentner,* following the Illinois practice, rules that counsel seeking to inquire on *voir dire* about the element of insurance must first satisfy the court, "out of the presence of the jury," that the need for such inquiry is genuine rather than phony. *Kiernan* takes the opposite tack and refuses to apply the local (Delaware) practice.

## *SUMMARY*

There is nothing mysterious or difficult about this issue of good or bad faith in conjunction with section 3030's mandate. *Some counsel do not want, and*

*have no use for, information about the element of liability insurance unless they can have it "elicited" out in the courtroom for impact there on all venire-men present, the uncalled as well as the called.* They want the minds of all those present focused, in part at least, upon the unseen presence of a liability insurer and the easy-money implications thereof rather than concentrated wholly upon the triable issues.

We should hold that the direct pursuit of Mrs. Bloom's questionnaire in the courtroom, by counsel for these plaintiffs, was simply a planned effort to circumvent a procedural statute which, having adopted it, the Court is committed to enforce (see *Benmark, supra* at 164). We should hold also, now that insurance-informative questionnaires are provided by rule, over and above other means to obtain necessary information such as *Darr* outlined for Michigan counsel, that there is no remaining need for *voir dire* interrogation such as was mulled over pro and con in the earlier cases cited by Justice Souris, commencing with *Church* v. *Stoldt,* 215 Mich 469, and concluding with *Fedorinchik* v. *Stewart,* 289 Mich 436. Those very cases were considered when we announced *Darr's* rule. See pages 395–397 of *Darr's* report.

No other posed question is apt to arise on retrial. These judgments should be reversed and a new trial should be ordered. Defendants should have costs.

*SUPPLEMENT (November 26, 1965)* Since the above was written Justice Adams has submitted his two-pronged opinion. Division I thereof proposes affirmance on ground that defense counsel *waived* the motion for mistrial Justice Souris and I have considered. Division II thereof, wholly gratuitous if there was a waiver as claimed, is unmistakably

designed to destroy section 3030.  Again, some comment is in order.

## I.

Quoting what appears at the margin,[8] Justice ADAMS says that "This case is similar to *Snyder* v. *Mathison,* 196 Mich 378." Is it? No motion for mistrial was made, much less reviewed by the Court, either in *Snyder* or in the case cited therein (*William R. Roach & Co.* v. *Blair,* 190 Mich 11). Here *two* motions for mistrial, each assigning purposeful injection of the question of insurance, were made. Each was denied.  Both were made *after* the jury had been sworn, not *before*.  In diametric contrast, the specific question considered in both *Snyder* and *Roach* was whether, by announcing final satisfaction with the jury as called up and examined, defense counsel respectively waived an *objection* (that only) he had made to an insurance-suggestive question the plaintiff's counsel had addressed to juror Eleveld in *Snyder* (p 382) and to juror Till in *Roach* (p 13).

It is difficult to understand the reason for citation like this, unless of course waggish amusement is intended.  Surely the citer has purposely ignored, or has inadvertently overlooked, the fact that both *Snyder* and *Roach* were tried more than a half century ago, long before what is now section 3030 appeared in our books (CL 1929, § 12460) ; long before the need for regulating *voir dire* insurance-interrogation in motor accident cases came to legislative attention and action, and more than 40 years before this Court adopted section 3030's prohibition as a rule of trial practice.  Even Mr. Robb, the plaintiffs' counsel here, hasn't been sufficiently temerous to cite

---

[8] "No request to charge on the subject was presented, and we think the subsequent announcement of satisfaction operated as a waiver of the matter. *William R. Roach & Co.* v. *Blair,* 190 Mich 11." (Justice ADAMS' quotation of *Snyder* v. *Mathison.*)

*Snyder* or *Roach,* or to urge that the Court go as far as Justice Adams proposes.

There was no waiver by defense counsel of his trial-denied motion for mistrial. He in fact made two motions for mistrial, one detailed in the foregoing opinion and the second at conclusion of the jury arguments.[9] Both motions pointed up what is already manifest; a planned effort by plaintiffs' counsel to bring to jury-thought and jury-consideration an inadmissible fact; that of insured liability protection. Both were denied, on the merits. On motion for new trial, defense counsel assigned such denial as error, with the same result. At no time did plaintiffs' counsel, or Judge Gilmore, hint that anything done or agreed when Juror No. 12's father died constituted a waiver as now alleged.

This allegation of waiver is, quite plainly, an appellate afterthought. The most plaintiffs' counsel attempt to make of it comes from this portion of his brief:

"On the second day of trial (the jury had been sworn in at the end of the first day) it developed that Juror No. 12's father had died on the preceding night and Juror No. 12 would not be able to attend the trial. Judge Gilmore stated that there were a number of alternatives available to counsel. Among

---

[9] Here is defendants' second motion for mistrial and its disposition by Judge Gilmore:

"*Mr. Sullivan:* If it please the court the defendants move for a mistrial because of the plaintiff's deliberate injection of insurance into this case. Up until the time that I had a portion of the record transcribed during the noon recess I was not·sure of the manner in which the term was used but I have it now."

In his closing argument in the first few lines Mr. Robb said:

"Negligence is no more than a wrong. Here we charge that the defendants were wrong in operating their car. They violated their legal duty. The law says that if you drive you must insure that you drive properly and carefully under the circumstances. If you don't you violate this duty; you must respond to damages. * * *

"*The Court:* That doesn't inject insurance into the. case, to my mind, I will deny the motion."

them were: 'second, bring up a panel and impanel one juror to give us 12; or third, discharge this jury completely and impanel a whole new jury.' If defense counsel believed that the jury had been 'contaminated' by the 'injection' of insurance in the *voir dire* of Mrs. Bloom, he should have requested, as was his right, that the entire jury be discharged and a whole new jury be impaneled. Instead, he agreed to proceed with the 11 'contaminated' jurors and to merely impanel one new juror;

" *'The Court:* * * * It is my understanding after the conversation that we have had, that it is agreed the way we will handle this is to impanel a 12th juror. * * * Mr. Sullivan agrees. * * *

" 'Is that agreed? * * *

"*Mr. Sullivan:* Yes.' "

Waiver, as we are told, is the *intentional* relinquishment of a known right. There were but two ways by which defendants' first motion for mistrial, a rightful one as Justice ADAMS seems to concede, could have been waived by them. One was a flat declaration of such waiver, on the record. The other would have been a declaration by Judge Gilmore, when he offered to declare a mistrial the next day, that upon retrial he would *renew and enforce his precedent at-chambers order.* There was no such declaration, and nothing said that would indicate the judge would not let Mr. Robb use other like questionnaires in the same manner.

At this point, for indicative stress, I think it in order that such at-chambers order be repeated:

" I will say, generally, to both counsel, so that we don't get into the possibility of a mistrial, if there are matters of law that could prejudice the jury, both of you are experienced enough to know that you should ask to have the jury excluded, and once it is excluded we can fully and completely settle the matter."

The procedural tragedy here is that Judge Gilmore sought by the above at-chambers order to carry out the letter of what was affirmed in the *Darr Case,* only to fail in the enforcement thereof when Mr. Robb broke loose without judicial authority. In actual fact the judge started out to apply the Illinois practice (see *Lentner, supra*) as well as our own. Had he enforced the quoted order to such end, Mrs. Bloom's name would no doubt have been removed from the black box by stipulation or, if no stipulation, by order of the court.

## II.

Criticizing *Darr, Felice,* and *Benmark* (the last bears his indorsement), Justice ADAMS alleges that "the broad reading it [the Court] has given section 3030 is foredoomed to failure." Well, one might gently suggest that it isn't possible to read section 3030 broadly or narrowly. We said, in *Felice,* that its ban is "written in simple English." It does or it doesn't ban "any reference whatever" to the question of carrying of insurance. But then, if our "broad reading" is thus foredoomed, so be it.

The forthcoming melee of attempted trials and mistrials of irrelevant and highly prejudicial issues, in cases coming within the legislatively intended purview of section 3030, is bound to disgrace our judicial system. The reason is there for all to see. If the prohibition effected by section 3030 is thus "foredoomed", the door will be just as wide open for the defendant's counsel as for the plaintiff's counsel. We said, in *Felice,* that section 3030's prohibition "applies to plaintiffs and defendants—and to their respective counsel—with equal force." Only those whose experience with the preparation and trial of damage actions has not been extensive will fail to perceive that, the ban lifted, the defense can and will

gain as much mileage out of insurance injection as will their damage-seeking opponents. It will not be difficult, utilizing in particular juror answers to questions 32 through 41 as same appear in GCR 1963, 510.1, for counsel to persuade the members of a typical jury that they with others are being touched for payment of those boxcar figures which, on the blackboard, have been added up. You see, section 3030 doesn't say "no mention" *by the plaintiff's counsel.* It just says "no mention."

Today's motion to water the stock of section 3030 by criticizing, as alleged "broad reading," our applications of that section as shown in *Darr, Felice,* and *Benmark,* is not exactly opaque. Come now, Brethren, why not be frank about this? Why not propose a new rule of court, comporting in detail with the insurance-suggestive cues and clews now put forth, and include with it an open repealer of section 3030? Are there not but two ways for a Court like ours to accomplish a procedural change like this? One to be sure is the way of the forthright. The other needs no description.

There is one area wherein Michigan's jurisprudential "quest for certainty" can and should provide utter dependability. That is the area of procedure; the adjective law. There is no reason why this Court cannot enforce section 3030 according to its specific design, allowing at all times, as plainly pointed out in *Darr,* every *pretrial* means of obtaining insurance-suggestive information which counsel aver they need to try properly in behalf of their clients the pleaded and pretrial-summarized issues. Illinois, not so well equipped by her constitution as sections 4 and 5 of Michigan's article 6 provide, has done so with fairness all around. See the discussion in *Lentner* v. *Lieberstein, ante* at 505.

Appendix 1.

Questions and answers, complete, as they appear in the personal history questionnaire of Juror Ada M. Bloom

1. Print name plainly: Bloom    Ada    Mary
                       Last Name First Name Middle Name
2. Address 710 W. Main  Northville    FI 9–3672
           Street Address  City or Village Zone  Telephone
                                                 Number
3. When and where were you born? Farmington, Michigan    9–8–06
                 Give exact date
4. Sex: F
5. Marital status (check one): Single ( ); Married (x); Divorced ( ); Separated ( ); Widow or Widower ( ).
6. Name of Spouse: C. H. Bloom
7. Occupation of spouse: Insurance
8. Spouse employed by: Self
9. Ages and number of children at home: None
10. Have you any defects in your hearing? No
11. Have you any defects in your vision? No—corrected
12. Is your general health good? Yes
13. Have you any physical infirmity? (Explain) No
14. State briefly the extent of your business or professional experience or other employment: Teacher—1 year
15. What is your present occupation? Housewife
       If not employed give line of work
16. Employed by:
17. If not employed, state your present means of livelihood (for example, housewife; pension; et cetera) Housewife
18. What duties do you perform in your present job?

19. State what other occupations you have been in during the past 10 years and what duties you performed:

20. Are you, or have you ever been, an officeholder for any State, county, or municipality? (Specify) No

21. Are you, or have you ever been, a law enforcement officer? (Specify) No

22. Are you an employer, landlord, or tenant? (Specify) No

23. Are you a freeholder (owner of real estate)? Yes

24. How long have you lived in Wayne County? 45 years

25. Have you ever studied law? (Explain) No

26. Have you ever studied medicine? (Explain) No

27. How far did you go in school? (Indicate highest grade completed or degrees received): Teacher Certificate—2 years

28. Have you ever served as a juror? No

29. If so, when and in what courts?

30. Have you ever been discharged (not excused) from jury service? No

31. If so, for what cause?

32. Do you drive a car? Yes

33. Do you (or your spouse) own a car? Yes

34. If so, is it insured? Yes

35. With what company? Auto Owner's

36. Have you ever been in an accident? (Explain) No

37. Were you injured? No

38. Was anyone else injured? (Explain):

39. Has any member of your family, or a close friend ever been in an accident? If so, explain: Slight family accidents with car

40. Are you a director of, or do you own stock, in any insurance companies? No

41. What companies?

42. Were you ever an inmate in a State or county institution? (Explain): No

43. Have you ever been convicted of a crime or misdemeanor (other than for a nonmoving traffic violation)? No

44. If so, explain:

45. Have you ever been arrested and charged with any crime? (Explain): No

46. If so, is that charge pending? No

47. Have you ever been a party to any suit, either civil or criminal? No

48. If so, state the nature and number of each suit and in what court:

49. Are you a citizen of the United States? Yes
    Are you a qualified voter of this State? Yes

50. Are you now, or have you ever been, at any time, a member of any subversive organization whose ritual favors violence and law violation? No

(The questionnaire was signed by Mrs. Bloom under date of March 8, 1963. The form complies in detail with GCR 1963, 510.1.)

### Appendix 2.

Plaintiffs' "Motion to peremptorily exclude reference to certain matters during trial."

---

"Now comes plaintiffs by their attorney Dean Robb and moves that opposing counsel be directed by the court to not make reference in the jury's presence to the following matters:

"1. That part of plaintiffs' medical and hospital expenses were paid for or reimbursed by other insurance.

"2. That in the traffic court proceedings arising out of this collision, charges against George Panagos were dismissed without prejudice.

"3. That in common pleas court, action 3–032–869, suit by City of Detroit *vs.* Panagos and Fosness, a settlement was made by Harold and Constance Fosness in the amount of $90.00.

"4. That plaintiffs carried Allstate insurance coverage on their automobile, and that certain moneys were paid by Allstate to them for losses sustained in this collision.

"Further, plaintiffs ask that the court instruct defense counsel that any reference to any of these matters will result in a mistrial, with taxation of full costs including attorney fees.

> Goodman, Crockett, Eden, Robb & Philo
> By /s/ Dean A. Robb
> ·  Dean A. Robb
> Attorneys for Plaintiffs
> 3220 Cadillac Tower
> Detroit 26, Michigan
> 965–0050

Dated:  December 9, 1963
        Detroit, Michigan"

Appendix 3.

Discussion prior to *voir dire* of motions to exclude

---

"*The Court:* Let the record show that we haven't pulled the jury yet in this case, but prior to the time of bringing the jury in and conducting the *voir dire,* Mr. Robb has a motion to make.

"*Mr. Robb:* The first motion is in written form, a motion to peremptorily exclude reference to certain matters during trial, and there is no need to report it on the record. I will just give it to the clerk, and indicate it has been filed at this time.

"*The Court:* All right. This will be filed.

"As I indicated, gentlemen, prior to the time of the reporter coming in on Mr. Robb's motion to peremptorily exclude certain matters during trial, I am not going to rule on any one of them. I will advise Mr. Sullivan that if any of these matters are to be brought up during the trial, he will say, 'I have a matter of law to take up with the court,' and the jury will be excluded and the court will consider each one.

"I give the same instruction to Mr. Robb with reference to a subpoena he mentioned regarding a certain accident report. If he wants to get into that during the trial, again, he will ask that the court excuse the jury.

"I will say, generally, to both counsel, so that we don't get into the possibility of a mistrial, if there are matters of law that could prejudice the jury, both of you are experienced enough to know that you should ask to have the jury excluded, and once it is excluded we can fully and completely settle the matter."

Dethmers and Kelly, JJ., concurred with Black, J.

O'Hara, J. (*for reversal*). I vote to reverse and remand for a new trial on the following narrow ground and on this ground only. Court Rule 510 by its operation made available to counsel for plaintiff all of the information he elicited from the prospective juror upon *voir dire*. I cannot comprehend why the examination appearing in both my confreres' opinions was undertaken without prior application to Judge Gilmore for ruling, and instruction as to further examination. This should have

been accomplished on the record in the absence of the jury.

By my holding here I make no finding of *mala fides.* I do find that forewarned counsel for plaintiff exceeded the limitation of the rule-adopted statute.*

I concur with Mr. Justice BLACK's result, and his award of costs.

SOURIS, J. (*for affirmance*).   In its earliest form the common-law jury consisted of neighbors of the litigants who were called in to decide the legal controversy upon the basis of their personal knowledge of disputed facts.   See Holmes, The Common Law (1881), pp 262, 263.   This procedure gradually gave way to one in which the jurors based their fact findings not on personal knowledge of the dispute, but rather solely upon the evidence presented to them during the trial.   See *Turner* v. *Louisiana* (1964), 379 US 466, 471 (85 S Ct 546, 13 L ed 2d 424); 1 Holdsworth, A History of English Law, pp 332–337 (7th ed 1956).

In Michigan it always has been the law that a juror, as far as is practicable, should be free from any preconceived opinions which might cause him to return a verdict not based solely upon the evidence produced at trial.   See *Crippen* v. *People* (1860), 8 Mich 117.   This goal of juror impartiality traditionally has been sought to be assured by means of the *voir dire* examination.   During such examination questions may be put to prospective jurors to determine whether they have any predispositions which would prevent them from rendering an impartial, evidence-grounded verdict.

The *voir dire* examination must be conducted with some care if its goal of assuring impartiality among the jurors is to be realized.   Upon the one hand, the

* See CLS 1961, § 500.3030; GCR 1963, 16.—REPORTER.

scope of questions asked should not be so restricted as to impede the elicitation of information which counsel needs in deciding whether a prospective juror is in fact impartial and otherwise is satisfactory to counsel. See *In re Petition of City of Detroit to Condemn Lands for Sewage Disposal Plant* (1937), 280 Mich 708, 716. Upon the other hand it must be admitted that by the very questions posed upon *voir dire* information can be conveyed to the panel which could predispose its members to a certain decision. See *Spelker* v. *Knobloch* (1958), 354 Mich 403, 407.

The necessity for maintaining close judicial control over *voir dire* examinations is demonstrated regularly in this Court in automobile negligence cases. A prospective juror who was financially interested in or somehow otherwise connected with an insurance company writing casualty risk policies for automobile owners might be predisposed against plaintiffs in such cases and, thus, a plaintiff in such a case would seem to be entitled legitimately to make inquiry to determine whether any prospective juror has such a relationship to the business of insurance that a predisposition against plaintiff's claim exists. However, the very fact that plaintiff makes such inquiry might put the veniremen on notice that defendant was insured, thus, arguably, predisposing them toward a finding in favor of plaintiff regardless of the evidence, or toward awarding him greater damages than they otherwise would absent the belief that defendant was insured. This dilemma is a concomitant of the effort to secure impartial juries for the trial of tort cases, and these cases of Fosness prompt our discussion of it once again.

Until our decision in *Darr* v. *Buckley* (1959), 355 Mich 392, this Court allowed examination of prospective jurors on *voir dire* regarding their membership in a mutual insurance company carrying the defend-

ant's risk and related matters which would constitute ground for challenging for cause and regarding other facts relating to insurance which would permit intelligent exercise of peremptory challenges. The only limitation generally applied in such cases was the good faith of the inquiry. See *Church* v. *Stoldt* (1921), 215 Mich 469; *Holman* v. *Cole* (1928), 242 Mich 402; *Palazzolo* v. *Sackett* (1928), 245 Mich 97; *Harker* v. *Bushouse* (1931), 254 Mich 187; *Holloway* v. *Nassar* (1936), 276 Mich 212; *Campbell* v. *Osterland* (1938), 283 Mich 175; *Fedorinchik* v. *Stewart* (1939), 289 Mich 436; and *Spelker* v. *Knobloch, supra.* The frequency with which this issue was presented to the Court, the above cited cases being only a selected sampling of those in which the issue was presented, and the variety of the insurance-related questions sought to be asked on *voir dire,* amply support the Court's characterization of the issue as a "vexatious subject" (*Holloway* v. *Nassar, supra,* p 215) and its recognition that on occasion counsel's purpose "was not to obtain information from the prospective jurors but, rather, to convey it to them" (*Spelker* v. *Knobloch, supra,* p 407).

Until *Darr* v. *Buckley,* and at least after *Harker* v. *Bushouse, supra,* CLS 1961, § 500.3030 (Stat Ann 1957 Rev § 24.13030) and its predecessor were thought not applicable because the issue presented a procedural problem exclusively within the judicial ken. However, in *Darr* v. *Buckley; DeGroff* v. *Clark* (1960), 358 Mich 274; and *Felice* v. *Weinman* (1964), 372 Mich 278, the statute was recognized by this Court as a rule of practice adopted by the Court by virtue of Court Rule No 1, § 3 (1945), and by currently applicable GCR 1963, 16. The statute, section 3030 of our insurance code of 1956 (PA 1956, No 218), reads as follows:

"In the original action brought by the injured person, or his or her personal representative in case death results from the accident, as mentioned in section 3006, the insurer shall not be made or joined as a party defendant, nor shall any reference whatever be made to such insurer or to the question of carrying of such insurance during the course of trial."

While the rule as stated in the quoted statutory language, in addition to forbidding the joinder of a defendant's casualty insurer, also forbids any reference whatever to be made during the trial to such insurer or to the fact that defendant was insured, it does not expressly forbid inquiry on *voir dire* examination, or otherwise during trial, regarding any other matters relating to insurance. For instance, the rule does not, by its terms, preclude the inquiry plaintiffs' counsel made during *voir dire* in the cases at bar relating to a prospective juror's possible bias in such cases as a result of her husband's being engaged in the insurance business. If such inquiry on *voir dire* is to be forbidden, it must be for a reason other than that it violates the quoted rule, for it manifestly does not.

As we have seen, before *Darr* v. *Buckley, voir dire* examination touching upon the subject of insurance was not regarded as a right without limitation. The limitations imposed were imposed by this Court not because of the quoted rule, reliance thereon having been expressly rejected in *Harker* v. *Bushouse,* but, rather, on general principles of relevancy and fairness. Thus, where *voir dire* inquiry involving insurance was relevant to a challenge of a prospective juror for cause—for instance, if the juror were a member of a mutual insurance company which carried defendant's risk, thereby having an interest in the outcome of the litigation—counsel was permitted to interrogate on that specific subject so long

as the interrogation was conducted in good faith. Indeed, this Court has approved good faith *voir dire* examination concerning insurance to permit counsel's intelligent exercise of his right of peremptory challenge. See *Church* v. *Stoldt, supra,* p 479. See, also, *Swain* v. *Alabama* (1965), 380 US 202, 209–222 (85 S Ct 824, 13 L ed 2d 759), for exhaustive consideration of the importance of the traditional right to challenge jurors to assure a fair trial by an impartial jury. The point of all of this is that while the quoted rule forbids joinder of, and reference to, defendant's insurer and reference to the fact that defendant was insured, other references to insurance continue to be governed, not by the quoted rule but, rather, by our general principles of relevancy and fairness.

In the case at bar, plaintiffs' counsel asked the following questions on the *voir dire* examination of one of the jurors:

"*Q.* Mrs. Bloom, you were a teacher at one time, and now you are a housewife, is that correct?
"*A.* Right.
"*Q.* What does your husband do?
"*A.* He has an insurance agency, general insurance.
"*Q.* Where is this insurance agency located?
"*A.* Northville, Michigan.
"*Q.* What is the name of the insurance agency?
"*A.* C. Harold Bloom Agency.
"*Q.* What companies does he represent?
"*A.* I don't know.
"*Q.* Does he write automobile insurance?
"*A.* Yes; and fire.
"*Q.* For a number of different companies?
"*A.* Yes. Many.
"*Q.* Many different auto companies?
"*A.* No. Mainly, Auto Owners. But he does have others.

"*Q.* Would the fact that your husband is in the insurance business make you favor one side or another in this case?

"*A.* No, it would not.

"*Q.* Have you had anything to do with the operation of the business?

"*A.* No.

"*Q.* Of taking reports?

"*A.* Nothing.

"*Q.* Your agency is out of your home then?

"*A.* Right.

"*Q.* The only thing you would be doing would be hearing your husband talk about his work?

"*A.* Occasionally.

"*Q.* Does he handle, in this agency, everything? If a policyholder has an accident, does he take the report?

"*A.* Yes.

"*Q.* And take care of it?

"*A.* He does no adjusting.

"*Q.* Not adjusting. But he takes care of the policyholders in all areas?

"*A.* Right.

"*Mr. Robb:* I have nothing further at this time."

None of the questions quoted referred to defendants' insurer nor to the fact that defendants were insured. Consequently, the rule of inadmissibility taken from section 3030 of our insurance code of 1956, quoted above, does not apply to bar what was done here. Furthermore, plaintiffs' counsel was entitled to know the information he elicited by his examination of Mrs. Bloom in order to determine whether he could challenge her for cause and, if not, whether he should challenge her peremptorily. Had he failed to inquire as he did, he would have had no basis for intelligent choice of the alternative actions available to him in completing the selection of a jury. Nor is the form in which his questions were cast offensive, prejudicially or otherwise. There

is no undue emphasis disclosed by the record of this examination upon the issue of insurance. Plaintiffs' counsel determined only the nature of Mr. Bloom's insurance business, without protracted examination, and that there was apparently no basis in the fact that her husband was engaged in such business for him to challenge Mrs. Bloom for cause or peremptorily.[1] The trial judge's denial of defendants' motion for mistrial, made immediately after the *voir dire* examination of Mrs. Bloom, was not, therefore, erroneous.

This holding finds support in the recent decision of the third circuit court of appeals in *Kiernan* v. *Van Schaik* (CA 3, 1965), 347 F2d 775. There, plaintiff had sought on *voir dire* to question the veniremen concerning employment by, or stockholdings in, casualty insurance companies. The court held that it was error to refuse to permit the asking of such questions (p 782):

"We hold, therefore, that in order to exercise intelligently his limited number of peremptory challenges and to determine whether ground exists for challenge for cause, a plaintiff in an accident case may make reasonable inquiry whether prospective jurors are or have been connected with the business of investigating or paying accident claims, either as employees, agents or stockholders of insurance companies or claims agencies without suggesting the existence of insurance in the case. An adequate caution should be given by the court to make it clear to the jury that these questions do not imply either that any defendant is insured or that the matter of

---

[1] As a matter of fact, it was defendants' counsel who challenged Mrs. Bloom peremptorily. Under such circumstances, I fail to follow Justice BLACK'S suggestion that "We may hardly assume that the assembled jurors did *not* conclude from what went on that Auto Owners was the 'defendants' insurer' and that the prompt dismissal of Mrs. Bloom [by *defendants'* counsel] was due to her husband's connection with Auto Owners".

insurance or lack of insurance is to be considered in reaching a verdict."

In *Darr* v. *Buckley,* as in our earlier cases of *Holman* v. *Cole, Harker* v. *Bushouse,* and *Holloway* v. *Nassar,* we have suggested alternative ways by which information concerning insurance which is relevant to a prospective juror's qualifications may be obtained without parading the spectre of an invisible, but collectible, insurer before the jury. It is implicit, if not always explicit, in what has been written, that counsel's good faith in venturing upon a *voir dire* inquiry, even one which is relevant and not expressly forbidden by the quoted rule, will be determined to a large extent by what the record shows of his diligence in seeking the information he needs by means available to him before the *voir dire* commences.

In this connection, it should be noted that since the beginning of 1963, by GCR 1963, 510, all prospective jurors are required to answer a questionnaire which, when completed, is filed with the clerk of the court and which is required to be made available to attorneys a reasonable time before they are required to challenge a juror for cause. Among the 48 questions required to be answered by prospective jurors are questions relating to their current and past occupations, their spouse's occupations, whether their automobiles are insured, and, if so, by whom, and their ownership of stock in insurance companies. Consequently, some of the questions previously permitted by this Court to be asked in good faith on *voir dire* examination no longer need be asked, the answers to such questions now being available before the trial commences. However, answers to some of the questionnaire's questions might well suggest the necessity for further inquiry into matters relating to insurance in order to permit counsel intelligently

to exercise his challenges. If there be no other way to make such inquiry except upon the *voir dire* examination, and if the subject be not proscribed by the quoted rule, then *voir dire* examination on the subject conducted in good faith should be permitted, but under judicial supervision to prevent a defensive inquiry from being perverted into a prejudicially offensive suggestion that defendant is insured.

When such inquiry is desired to be made, counsel should so advise the trial judge and opposing counsel in advance, specifying the subject of the inquiry and its predictable scope. If opposing counsel agrees to withdraw the prospective juror's name from the jury box, no further inquiry need be made. If he does not, then the trial judge properly may permit *voir dire* examination on the subject. In some cases, the trial judge may determine to make such reasonably requested inquiry himself, even in those circuits in which traditionally counsel are permitted to conduct the *voir dire* examination. In other cases, the trial judge may determine to allow counsel to make the inquiry, but only by putting questions to the prospective juror which have been approved by the judge in advance. In any event, establishing in advance a precautionary procedure will minimize the risk that counsel may be found to have proceeded in bad faith and thereby will minimize the risk of mistrial.

None of defendants' other asserted grounds for reversal is meritorious. Among them is the claim that the trial judge should have directed a verdict in favor of defendants because plaintiff driver was guilty of contributory negligence as a matter of law. That a jury might properly have so found cannot be doubted. However, evidence that plaintiff driver observed defendants' car as it was slowly turning around a boulevard island from westbound to east-

bound, the direction in which she was traveling, without altering her course or sounding a warning until it was too late to avoid the collision which occurred, even if we assume such evidence to be the most favorable available to plaintiffs, would not have justified a directed verdict.    We need only cite and quote again from Mr. Chief Justice Cooley's opinion in *Detroit & M. R. Co.* v. *Van Steinburg* (1868), 17 Mich 99, at pp 118, 119:

"As a general rule, it can not be doubted that the question of negligence is a question of fact and not of law:  *  *  *  Negligence, as I understand it, consists in a want of that reasonable care which would be exercised by a person of ordinary prudence under all the existing circumstances, in view of the probable danger of injury.   The injury [inquiry?] is, therefore, one which must take into consideration all these circumstances, and it must measure the prudence of the party's conduct by a standard of behavior likely to have been adopted by other persons of common prudence.   Moreover, if the danger depends at all upon the action of any other person under a given set of circumstances, the prudence of the party injured must be estimated in view of what he had a right to expect from such other person, and he is not to be considered blamable if the injury has resulted from the action of another which he could not reasonably have anticipated.   Thus the problem is complicated by the necessity of taking into account the two sets of circumstances affecting the conduct of different persons, and is only to be satisfactorily solved by the jury placing themselves in the position of the injured person, and examining those circumstances as they then presented themselves to him, and from that stand-point judging whether he was guilty of negligence or not.   It is evident that such a problem can not usually be one upon which the law can pronounce a definite sentence, and that it

must be left to the sifting and determination of a jury."

Affirmed. Costs may be taxed by plaintiffs.

T. M. Kavanagh, C. J., and Smith, J., concurred with Souris, J.

Adams, J. (*for affirmance*).

## I.

I agree with Justice Black that this Court's construction of section 3030 of the insurance code of 1956 (CLS 1961, § 500.3030 [Stat Ann 1957 Rev § 24.13030]), especially since *Darr* v. *Buckley,* 355 Mich 392, *DeGroff* v. *Clark,* 358 Mich 274, and *Felice* v. *Weinman,* 372 Mich 278, has been such as to ban injection of the element of liability insurance either on *voir dire* or during trial of a lawsuit.

This broad reading of 3030, as Justice Souris points out, covers much greater territory than the plain language of that section. Whether we should so construe 3030 is a subject upon which I will have more to say later. While I agree with Justice Black's statement of what the interpretation of 3030 has been, I would not reverse for the error that occurred on the *voir dire* examination because the defendants were not prejudiced by it.

In denying the motion for a mistrial, the court said:

"I do not think that the question of insurance has been so injected in here that it would require a mistrial."

This Court might disagree with that assessment. But there is more for us to consider than there was before the judge when he made it. Immediately

after the ruling, counsel for defendants must have agreed with the trial judge because counsel refused the court's offer of a new jury. One of the impaneled jurors had to be excused. Judge Gilmore stated that he was willing to:

"First, proceed with 11 jurors; second, bring up a panel and impanel one juror to give us 12; or third, discharge this jury completely and impanel a whole new jury."

Either counsel desired a mistrial or did not. His action in declining a new jury indicated that he had made the motion for mistrial for the sole purpose of preserving error in the event of an unfavorable verdict. While a party involved in litigation should be protected from reversible error, no party has the right to treat a trial as a form of gamesmanship in which one side attempts to outpoint the other or the judge. Error, reversible error, is not something to be sought but, rather, to be avoided. Defendants should have taken the offer of a new jury panel if they felt their rights had been affected.

This case is similar to *Snyder* v. *Mathison*, 196 Mich 378. In that case counsel for the plaintiff attempted to examine a juror about his representation of an insurance company. The court ruled the examination improper. Defense counsel, with peremptory challenges remaining, expressed satisfaction with the jury. On review, this Court said:

"No request to charge on the subject was presented, and we think the subsequent announcement of satisfaction operated as a waiver of the matter. *William R. Roach & Co.* v. *Blair*, 190 Mich 11."

In 89 CJS, Trial, § 658, p 503, it is stated:

"Errors and irregularities in the proceedings preliminary to the trial may be waived and cured by

some affirmative act of the complaining party amounting to an express or implied assent to the proper procedure."

And, in 4 CJS, Appeal and Error, § 350, p 1169:

"There may be a waiver of exceptions, even though they have been properly taken and saved in the trial court, thus barring their consideration on appeal. Such a waiver is effected where, on a trial, a party takes a step or adopts a course directly inconsistent with the exception previously taken by him to the ruling of the trial court."

To the same effect, see 22 MLP, Trial, § 381, p 484; 5 Am Jur 2d, Appeal and Error, § 562, p 42; 13A West's Michigan Digest, Trial, § 406, p 643.

## II.

Justice BLACK makes reference to the financial responsibility section of the motor vehicle code (CLS 1961, § 257.504 [Stat Ann 1960 Rev § 9.2204]), saying:

"The jury reported a total verdict of $20,000 for the two plaintiffs. That amount is the publicly well known minimal requirement, respecting two or more causes arising out of the same accident, of the financial responsibility act (CLS 1961, § 257.504 [Stat Ann 1960 Rev § 9.2204])."

To that section may now be added presumed common knowledge of the provisions of the newly-enacted motor vehicle accident claims act (PA 1965, No 198, as amended by PA 1965, No 389 [CL 1948, § 257.1101 et seq. (Stat Ann 1965 Cum Supp § 9.2801 et seq.)]).*

Insurance is so much a fact of life today it is unrealistic to expect that it can be completely excluded

---

* PA 1965, No 198, became effective November 1, 1965.

from the minds of jurors. One could speculate that the merits of a plaintiff's case are now circumscribed by the known limits commonly in force in insurance policies, and that consequently the fact of insurance being injected into a case, rather than being advantageous, is detrimental to a badly injured plaintiff. Whether insurance presents "easy-money implications" or a limitation on recovery no doubt depends upon the mind of the particular juror or the composite mind of a particular jury. This is little different from the possibility of prejudice in a lawsuit between a rich defendant and poor plaintiff, or a big corporation and a widow. The focus of a trial ought always to be upon the merits of the controversy and the effect of this "fact" of insurance should be eliminated from the jury's performance of its duty by a judge's conduct of the trial.

However, no means has yet been devised to obtain juries completely bereft of all knowledge of the world. A jury forms its judgment not only from the evidence in a case but from its own worldly knowledge—of automobiles, of people, and of pain and suffering. Most juries today are bound to assume, in view of the financial responsibility act, in view of the motor vehicle accident claims act, in view of the fact of insurance generally, that an invisible party stands behind one or possibly both litigants. This does not mean an end to jury trials or that juries no longer are able to decide issues between actual parties to litigation. Anyone with faith in the fair-mindedness of juries must make the contrary assumption.

The fact that insurance, particularly a juror's connection with the industry, may be mentioned should be no more reason for a mistrial than the fact that automobiles sometimes run over people, that pain, agony, and even death, result from crushed bodies. Such facts can also prejudice juries.

Certainly no particular insurance company that is the insurer of a party should be injected into the *voir dire* or the trial; but the general fact that insurance is to afford recompense to those who have been injured is bound to be in the minds of jurors whether injected by counsel or not. The attempt of this Court to exclude it by the broad reading it has given section 3030 is foredoomed to failure. I would give that section the construction Justice SOURIS has set forth in his opinion.

I vote to affirm the trial judge.